ELKINS *v.* NELSON.

4-5057

Opinion delivered May 16, 1938.

210

*John L. Carter,* for appellant.

*Sam Robinson,* for appellee.

MEHAFFY, J. On April 13, 1937, the appellee filed his complaint in the circuit court of Pulaski county alleging that in January, 1934, he sold and delivered to M. W. Elkins certain stock in the M. W. Elkins Company, and that the agreed sale price was $1,500; that said M. W. Elkins has only paid $75 on the purchase price, and that there is now due a balance of $1,425, and he prays judgment for that amount and interest.

The appellant filed answer denying all the material allegations in the complaint and specially pleading the statute of limitations and the statute of frauds.

The case was tried before a jury on October 4, 1937, and the jury found in favor of the appellee in the sum of $1,425. The case is here on appeal.

The appellee testified that he sold M. W. Elkins one share of stock in the M. W. Elkins Company in the early part of 1934; that he delivered the stock to him at that

time; that he had previously worked for Elkins on a commission; worked for him seven or eight years; the M. W. Elkins Company was formed with three incorporators, M. W. Elkins, J. A. Dickinson and appellee; that Elkins and Dickinson were the principal stockholders and the active principals; that at the time of the sale of the stock he was traveling, and was not in the office except on Saturdays; that he was in town Saturdays and Sundays; that Elkins and Dickinson could not agree and it became a matter of one or the other getting out of the company; that Elkins wanted Dickinson out; that late in 1933, while appellee was traveling for Walton, Sullivan & Company, Elkins left word for him to call when he came to town; witness met Elkins; Elkins offered him $150 a month to come back and work for him and told him that he would pay witness to sell witness' stock, and Elkins offered $500 in cash when the case in court was over, $500 in six months and $500 in nine months. Witness later agreed to accept this for the stock; he delivered the stock, signed his name on the certificate in the presence of Mr. Wallace Townsend, Mr. Elkins' attorney, in Elkins' office; witness made a number of trips to Elkins' office in an effort to collect on the stock; Elkins paid him $25 some time in April, 1934; witness gave Mr. Elkins his note for $25 and Elkins gave witness a note for $25; witness said that if he gave Elkins his note for $25 it would look like a loan and asked Elkins to give him his note for the same amount; the note given by Elkins was identified and introduced in evidence, and is as follows:

"Little Rock, Ark.,
"April 17, 1934.
"Due H. E. Nelson on demand $25.
"(Signed)  M. W. Elkins."

This was Elkins method of making a payment of $25 on the purchase price of the stock. Witness further testified that appellant had never denied to him that he owed the $1,500; Elkins made another payment of $50 on June 30; witness left here a year ago last July 1, and this $50 payment was on June 30; Elkins stated at the

time that he knew he owed appellee, but did not have the money to pay it; while witness was away he wrote Elkins from Bloomington, Illinois, and wired him around the first of August last year, 1936, requesting payment; he wrote him three letters after that, but never had a reply to the wire or the letters; appellee came down in April and filed suit; when asked what company he claimed he owned stock in he said he believed that it was the M. W. Elkins Company, but the stock certificate would show; he owned one share; it was issued to him when he was working for Mr. Elkins and issued to him as a third stockholder; he paid nothing for it in money; he was in the employ of Elkins at the time; he did not indorse the stock at the time, but indorsed it at the time he transferred it to Elkins; he knew he indorsed it in the presence of Mr. Wallace Townsend after the trial in Judge Dodge's court; that he owned the stock in the Elkins Company; whatever name the company was the certificate would show; the stock was handed to witness, given to him in order to make three incorporators, and that the contract to sell it to Elkins was oral; appellee testified that he gave a note at the time he purchased the stock and this note was introduced in evidence:

"$25.00          "Little Rock, Ark., April 16th, 1934.

     "On Demand.......................................................days after date I promise to pay to the order of the Ark. Bond Co.
          Twenty-five & No/100...........................Dollars
for value received, negotiable and payable without defalcation or discount at the office of the..........................................
.........................with interest from.............................................................
at the rate of...........................per cent. per annum until paid.
"DUE.....................................................................

                         "(Signed)   H. E. Nelson."

Appellee testified that the $25 he received was on the 16th of April and was paid on the contract; that the $50 was received on June 30, 1936; he secured contracts for the refund of the bonds of the Magazine School District, for which he had never received payment; when asked where he kept this alleged stock he said it was held by Mr. M. W. Elkins; when the stock was sold to Elkins,

Elkins needed witness' signature; he said he did not know whether he signed the certificate in ink or pencil, but that his signature would be the same in either event; he testified that he had previously owned another piece of stock which was signed back to Mr. Elkins without consideration; he had been to see Elkins a number of times and Elkins never denied owing him the money; he stated that he did not have a copy of the telegram, but could get it; he never borrowed any money from Elkins or the company; witness admitted that he handled the contract with the Magazine School District.

At the close of appellee's testimony the appellant requested a peremptory instruction which the court refused to give, and appellant saved his exception.

Mrs. Floy Gene Sims testified for the appellant that she formerly worked for Mr. Elkins, was working there in 1934; her duties were to take care of the books and she wrote all checks; she was bookkeeper; that she signed a check for H. E. Nelson for $50 in 1934; the check was exhibited to witness and she identified her handwriting; that she drew a check in April, 1934, payable to Nelson for $25, and identified Nelson's signature; she was asked to refer to the stubs and tell to what the check was charged; she testified that it showed a loan secured by note of $25; witness then read from the stub; she was then handed a check for $50 drawn June 29, 1936, and stated that it was drawn on M. W. Elkins Company, and charged to the commission account; she also testified that the stub showed that on April 17th a loan to H. E. Wilson was secured by a note and charged to bills receivable; (she evidently meant H. E. Nelson); the $50 paid on June 29 was charged to the general account, and it was for the Magazine School District; all the entries that she testified about were in her own handwriting and entered at the time the transaction took place. On cross-examination she testified that she was bookkeeper and did what Mr. Elkins advised her to do; she knew nothing about the $50 payment, but that she was told to charge it to the Magazine School District Refund; when asked to show the attorney for appellee the Magazine

School District account, she said it did not appear in that book; she knew nothing about the account; she went there after the account was closed, in 1933, and the entry was made in 1936 at the time the check was drawn; witness was not there when the Magazine transaction was consummated, and in 1936 a different corporation gave a check and credited it on that item; she did not know anything about how much was coming to appellee; she had never had anything to do with the Magazine account and did not know of her own knowledge whether any commissions had been paid to Mr. Nelson; that all the salesmen worked on commission, and the commissions were paid when the bond sale was completed. She testified that she charged the $50 where Mr. Elkins told her to charge it.

M. W. Elkins testified that he owned $1,000 worth of stock in the M. W. Elkins Investment Company, and that Dickinson owned $1,000 worth of stock; that Mr. Nelson had one share of witness' stock; that Nelson never owned the stock, and that it was issued to him so that he could serve as a director, and that he kept the stock in the office all the time; that Nelson never had possession of it; Nelson had never owned any stock in any of the companies; that witness always owned the stock, and there was no occasion to pay Nelson one cent, and that he did not contract to buy it back from him; that the $25 check was for a loan of $25; that the $50 check was issued in payment of the Magazine School District as commission; the commission was $75; that it was a claim that should have been filed in chancery at the time the suit was pending there; that every other claim was paid in a few days after the company was dissolved; that he bought the stock of M. W. Elkins Investment Company, including the Magazine School District contract; that when he gave Nelson the check it was understood that it was for the Magazine School District; the bookkeeper was told where to charge it in the presence of Nelson; when the stock was issued Nelson signed it in blank and witness put it in his safe; Elkins and Dickinson each held 50 per cent. of the stock of the M. W.

Elkins Investment Company; $1,000 was issued to Dickinson, $900 to Elkins, and $100 to Nelson, which Nelson indorsed back to witness; never made any contract with Nelson to buy back the stock; its par value was $100 for which Nelson paid nothing; it was issued to him so he could serve as a director.

At the close of this testimony appellant again requested the court to give a peremptory instruction in his favor, which the court refused to give, and exceptions were saved.

This suit was filed April 13, 1937, and both the appellee and the bookkeeper, Mrs. Sims, testified that the $50 payment was made in June, 1936. The appellee stated that he received the check on June 30, 1936, and Mrs. Sims testified that it was issued on June 29, 1936. There is no dispute about the date of this payment, and suit was brought within less than one year after this payment was made. It was, therefore, not barred by the statute of limitations.

It is contended, however, by the appellant that a recovery is prevented by the statute of frauds. Section 6061 of Pope's Digest reads as follows: "No contract for the sale of goods, wares and merchandise, for the price of thirty dollars or upward, shall be binding on the parties unless, first, there be some note or memorandum signed by the party to be charged: or, second, the purchaser shall accept a part of the goods so sold, and actually receive same; or, third, shall give something in earnest to bind the bargain, or in part payment thereof."

The contract for the sale of corporate stock for $30 or more is within the statute of frauds.

This court said in the case of *Stifft* v. *Stiewel*, 91 Ark. 445, 125 S. W. 1008: "It is well established that a parol contract for the sale of corporate stock (other conditions existing) is within the statute of frauds."

Therefore, there must either be some note or memorandum signed by the party to be charged, or the purchaser shall accept part of the goods so sold and actually receive same, or shall give something in earnest to bind the bargain or in part payment thereof.

The appellee testified that he delivered the stock certificate to Elkins after signing his name to it, and that Mr. Wallace Townsend was present when this was done. Mr. Townsend does not testify. It, therefore, appears from the testimony of the appellee that the appellant accepted the certificate which appellee said he sold to him, and that he actually received it at the time. According to appellee's testimony two payments were made. The last one was for $50 June 29, 1936. Either of these would take it out of the statute of frauds; that is, the signing and delivering the stock certificate by Nelson, and the acceptance by Elkins, or the part payment for the stock.

It is argued that the certificate was not delivered to Elkins, but that it had been in his possession all the while, and it is true that the mere fact that the goods were in possession of the buyer does not furnish any evidence of receipt and acceptance, but that there must be some affirmative act reasonably indicating an assertion by the buyer of control over the property as owner. 25 R. C. L. 623, quoted and relied on by appellant states, among other things: "On the other hand where the goods are in the buyer's possession as bailee or agent for the seller, there is evidence of a valid receipt and acceptance, where the buyer's acts are inconsistent with the supposition that he continues in possession in his former character."

If appellee's testimony is true, the buyer's acts are inconsistent with the supposition that he continues in possession in his former character. The evidence shows that it was signed and delivered at the time. It is true that appellant claims that it was his stock all the time. But under the statutes of Arkansas, a corporation cannot be formed with less than three stockholders, and § 2129 of Pope's Digest provides that there must be three or more persons of full age and they must make, subscribe and acknowledge, and file in the office of the Secretary of State, articles setting forth the name of the proposed corporation, the purpose of the corporation, the

duration of the corporation and many other things that the corporators must do.

If Nelson was not a stockholder, there was no corporation formed; but all of the acts of the corporators, including the acts of Elkins, tend to show that a corporation was formed and, if so, Nelson owned one share of the stock, and if he did own one share, the evidence tends to show that he sold it and transferred it to Elkins in the presence of his attorney, Mr. Wallace Townsend.

There is some conflict in the evidence as to whether the certificate of stock was signed and delivered at the time the contract of sale was made.

The court did not err in giving instruction No. 1 requested by appellee. That instruction reads as follows:

"You are instructed that if you find from a preponderance of the evidence in this case that the plaintiff and the defendant entered into an agreement whereby the defendant purchased from the plaintiff stock in the M. W. Elkins Company or M. W. Elkins Investment Company and agreed to pay therefor a certain stipulated amount, and that the plaintiff carried out his part of the agreement by delivering the said stock to the defendant, and that on April 17th, 1934, defendant paid $25 on the purchase price of said stock, and in June, 1936, made another payment of $50 on said stock, then you will find for the plaintiff in whatever amount you find was the agreed purchase price, less whatever amount has been paid."

The first objection offered by appellant to this instruction is that it does not state for what it was paid. We do not agree with appellant in this contention. The court instructs the jury that if they find from a preponderance of the evidence that an agreement was made for the sale of the stock, and that Elkins agreed to pay a certain stipulated amount, and that Nelson carried out his part of the agreement by delivering the stock, and that appellant paid on the purchase price $25 at one time and $50 at another, then they will find for the appellee in whatever amount they find was the agreed purchase price, less whatever amount had been paid.

The instruction specifically states if they find that the $50 was paid on said stock, they shall find for the appellee.

Appellant's next objection is that the use of the words "M. W. Elkins Investment Company" does not conform to the pleadings. The appellee testified that the certificate of stock would show what company it was, and it would be immaterial whether it was the M. W. Elkins Company or the M. W. Elkins Investment Company; it was a certificate of stock in one of the Elkins' companies which appellee alleged he sold to Elkins.

Where a payment is made on the purchase price of goods, it is not necessary that there be any memorandum showing the purpose for which it was made.

It is next contended by the appellant that the evidence is insufficient to support the verdict. In determining whether the evidence is sufficient to support the verdict, we must view the evidence in the light most favorable to appellee, and if there is any substantial evidence to support the verdict it will be sustained.

The evidence of appellee in this case shows that he signed and delivered to Elkins his certificate of stock, and that two payments were made on it, the last one being made on June 29, 1936. According to appellant's evidence the certificate of stock was actually issued to appellee. We think there is ample evidence to support the verdict.

Moreover, it is the province of the jury to pass on the credibility of the witnesses and weight of their testimony, and if their verdict is supported by substantial evidence, it must be permitted to stand.

The judgment is affirmed.