BROOKS *v.* BALE CHEVROLET COMPANY, INC.

4-5424 · 127 S. W. 2d 135

Opinion delivered April 10, 1939.

*Sam Robinson, Osro Cobb* and *C. E. Johnson,* for appellant.

*Donham & Fulk,* for appellee.

GRIFFIN SMITH, C. J.  This appeal is from judgment on a directed verdict in favor of the defendant.

Allegations were that on the night of June 9, 1935, appellant, while proceeding east on his motorcycle[1] on

---

[1] The accident occurred on that part of Highway No. 70 which is a continuation of Third Street east of North Little Rock, on the four-lane thoroughfare near Rose City.

Highway No. 70, undertook to pass a Chevrolet car belonging to appellee and at the time driven by Ray Wools; that when appellant undertook to pass the car, Wools, who was driving on the wrong side of the highway, negligently cut his car sharply to the left, striking plaintiff's motorcycle, as a consequence of which plaintiff was thrown and injured. These allegations were supported by substantial evidence.

Appellant's motorcycle was one of four such machines, three of which carried two passengers each.[2]

When the accident occurred Wools and his companions[3] were enroute to a night club—''on the Memphis highway,'' as Miss Livingston explained it.

Miss Livingston, a witness for appellee, was asked:

[2] Appellant testified: "[I] met some of the boys on the night of the accident at Seventh and Center and first rode out to Smith's dance hall on Twelfth street; [we] left the dance hall and were riding around."

Fred Inman, witness for appellant, testified in part: "There were four motorcycles in the group, three of them having a second passenger, but [appellant] had no additional passenger on his machine. Roller and Lacy had young ladies on the back of their motorcycles; [we] were out to Smith's beer garden and left about eleven o'clock; were not riding four abreast; were going between 35 and 40 miles an hour. Brooks got within about thirty feet of the [Wools] car and pulled his motorcycle to the left, five feet beyond the center line and started to go by the car, [and the Wools] car swerved to the left about six feet as Brooks started to go by."

[3] Miss Livingston testified in part: ". . . Mr. Wools was driving very slowly, much slower than people ordinarily drive— about twenty miles an hour—when the car was struck by a motorcycle. He was driving on the right side of a four-lane highway. . . Suddenly we heard the noise of the motorcycles. They came up and were gone, and in the meantime one hit us. The motorcycles were going at such a fast rate of speed that they were gone before we knew it, and one of the motorcycles hit the automobile on the left side, at the rear end. We stopped, and the boy with me got out. . . . It is not true that Mr. Wools suddenly swerved his car in such a manner as to cause the collision. . . . I estimate the speed of those motorcycles at from 50 to 60 miles an hour. Some of them went on; some came back. The motorcycles in front were going so fast they didn't know there had been an accident until it took them time to turn around and come back. . . . Apparently all of those motorcycles passed us at the same time."

"Did you hear any conversation in which [Wools] tried to sell Sosbee a car that night? A. No, he didn't try to sell him a car that night. Q. Was it your understanding you were just going out for pleasure? A. O, yes, of course."

On cross examination the witness was asked: "What was it that Wools said to Sosbee about selling him an automobile? A. He said, 'When are you going to let me sell you a car?' Q. What did Sosbee say? A. I don't really remember. He didn't say anything: maybe like a man would say 'tomorrow'—he was indefinite."

Appellant undertakes to predicate liability upon the remarks exchanged between Wools and Sosbee, the theory being that Wools was a salesman; that he was on twenty-four hour duty; that on the night in question the car in which the young people were riding was a demonstration unit, and that Wools was engaged in the master's business when the wreck occurred.

Plaintiff's witness Trotter testified that for twelve years he had sold automobiles, and was working for appellee in June, 1935; that Wools was a new car salesman, and that regular sales meetings were held with officials of the company each morning. It was sought to show by this witness that the company had instructed Wools and other salesmen at such meetings to attempt to demonstrate cars and to make sales at night.[4] Other witnesses were offered by whom it was proposed to establish the same facts. On motion of the defendant the evidence was excluded.

Plaintiff offered to prove by Charles Cole, of Batesville, that Wools had discussed the accident and attending circumstances and had stated that he was trying to sell

[4] It was alleged that directions on the part of Bale Chevrolet Company officials was that salesmen should "catch the men and their wives together, or find it more convenient to the prospective customer to see him after work hours; that said officials considered the nighttime as one of the best times in which to make sales to all classes of prospective customers; that they were instructed to pick up people who were waiting for street cars and pursue any and all means at any time, hour of the day or night in making friends and contacts with the public in an effort to promote sales."

20

Sosbee a car the night of the accident. The court ruled that the evidence was competent only in rebuttal. Wools did not testify.

It is insisted that error was committed in excluding the testimony of Trotter and other salesmen, and that further error was committed in excluding Cole's testimony.

Competency of the testimony of Trotter and others is urged on authority of *Ward* v. *Young,* 42 Ark. 542, where it was said: "Relevant testimony is that which conduces to the proof of a hypothesis, which, if sustained, would logically influence the issue. Hence, it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less improbable."[5]

It is also contended that *Casteel* v. *Yantis-Harper Tire Company*[6] is in point.

The trial court correctly directed a verdict. If the only questions were whether Wools was negligent in operating the car and his consequent responsibility for the accident, we would hold that the evidence was sufficient to go to the jury, although such evidence is sharply contradicted by Miss Livingston. Neither Wools, Sosbee, nor either of the other three occupants of the automobile testified. Miss Livingston was not an interested party. Her testimony was that the group started about eleven o'clock Saturday night, and that the accident occurred about midnight—"at 12:30 or 1:00 o'clock." One of appellant's witnesses testified that the time was 11:30 or 12:00 o'clock.

There is no dispute of one essential fact: that is, those in the Wools party were on their way to a night club. Although Wools asked Sosbee "when are you going to let me sell you a car?" there is no evidence that Sosbee had the slightest intention of making a purchase. Even if we should assume that Wools was under general instructions to be on the alert at all times for prospective customers, Wools' remark and Sosbee's answer cannot be interpreted as anything more than an inquiry

[5] The quotation is from a headnote, rather than from the text of the opinion.

[6] 183 Ark. 912, 39 S. W. 2d 306.

prompted by a fleeting impulse; an inquiry directed in circumstances which in all respects negatived any idea that the car in which they were riding was being used for demonstration purposes.

It is true that if an automobile causing an accident belongs to the defendant and is being operated at the time of the accident by one of the regular employees of the defendant, there is a reasonable inference that at such time the employee was acting within the scope of his employment and in furtherance of the master's business.[7]

But this is only a *prima facie* presumption or inference—a presumption or inference deducible from the naked facts of physical ownership, contract of employment, and permissive or directed operation.

When, as in the instant case, it is shown by undisputed evidence that five young people met at half past ten o'clock on Saturday night, drove from one to two hours without important purpose, then directed their course to a night club and were well on their way to that objective when the accident occurred, presumption of pursuit of the master's business must give way to the obvious facts.

Miss Livingston's testimony that she had a "date" with Sosbee is not questioned. She assigned as a reason for their late start that Sosbee had to work until 10:30. Wools, Gault, and a lady other than Miss Livingston were in the front seat. The only evidence explaining the purpose of the drive is that given by Miss Livingston, who affirms that she was filling an engagement. Where they drove and how they went—these matters were only incidental to the objective of entertainment. Miss Livingston's father is principal of the Bauxite school. The daughter had formerly taught at the David O. Dodd school on the Hot Springs Highway. Her character is not questioned.

Why, then, should we say that a jury, because of the incidental remark about selling a car, ought to have the right to speculate or engage in conjecture over the

---

[7] *Mullins* v. *Ritchie Grocery Company*, 183 Ark. 218, 35 S. W. 2d 1010.

meaning of a question asked by Wools *after* the party had assembled and was under way? To do so would be to permit the undisputed objective to be disregarded in favor of conclusions lacking in those substantial qualities which the law makes essential to a verdict of liabilty.

No foundation was laid for introduction of the evidence proposed through the witness Cole. In the absence of testimony by Wools, who might have been called by the plaintiff, the declarations were hearsay.

Affirmed.