ALLEN *v.* ROSS.

4-5809 138 S. W. 2d 409

Opinion delivered March 18, 1940.

*Frierson & Frierson* and *Reid & Evrard*, for appellants.

*J. Brinkerhoff* and *C. T. Carpenter*, for appellee.

HUMPHREYS, J. This suit was brought by appellee against appellants in the circuit court of Poinsett county to recover $15,000 for injuries received by him through the alleged negligence of R. C. Allen, employee of the Liggett & Myers Tobacco company, a corporation, in negligently operating a truck belonging to the company so that it struck a highway bridge, turned over and fell down an embankment and injured appellee who was sitting around a camp fire with others where they had camped to fish.

The specific acts of negligence alleged were that R. C. Allen was operating the truck while in an intoxicated condition at an excessive rate of speed and in such a negligent and careless manner that he could not keep it on the road and in attempting to drive on to a bridge struck the south banister of same, causing the truck to catapult off the embankment, striking and knocking appellee twelve or fifteen feet and seriously injuring him while he was in the exercise of due care for his own safety.

R. C. Allen filed an answer denying the material allegations of the complaint.

Liggett & Myers Tobacco Company filed an answer denying the material allegations of the complaint, and while admitting that R. C. Allen was its agent and employee for the purpose of selling its products for cash, taking orders for its products and advertising its business, it denied that at the time of the accident R. C. Allen was engaged in the performance of his duties as its employee or was acting within the scope of his authority from it, but, on the contrary, had converted the truck to his own use for a larking trip with a young woman he had dated for the evening; that during the pleasure trip the young woman jumped out of the truck and disappeared in the darkness; that he proceeded to drive up and down the road in search for her and while so engaged ran his truck into the south banister of a bridge causing it to fall over the dump and strike appellee.

The cause proceeded to a hearing before the court and jury, and at the conclusion of the testimony R. C.

Allen requested the court to instruct the jury to return a verdict for him because no evidence had been introduced to sustain the allegations to the effect that he was driving the car while he was intoxicated and at an excessive rate of speed.

The motion was overruled and exceptions to the ruling were saved.

Liggett & Myers Tobacco Company also requested the court to instruct the jury to return a verdict for it, in which R. C. Allen joined, because no evidence had been introduced to sustain the allegations of negligence against R. C. Allen and also because the undisputed evidence reflected that R. C. Allen was not engaged in the company's business and not acting within the scope of his employment at the time the wreck and injury occurred.

The motion was overruled and exceptions to the ruling were saved.

The cause was then submitted to the jury upon the pleadings, evidence introduced by the respective parties and instructions of the court, resulting in a judgment against appellants for $4,000, from which is this appeal.

The record in this case is unusually voluminous and on account of its volume we shall not attempt to review and analyze the evidence relating to the allegations of negligence in this opinion. It would extend the opinion to great length to attempt to do so. We, therefore, content ourselves with stating that, after a careful reading of the abstract and argument of counsel for both appellants and appellee, we think there is sufficient substantial evidence in the record tending to show that R. C. Allen was driving the truck while he was intoxicated and at an excessive rate of speed at the time of the wreck and injury to appellee, and that his negligence was the proximate cause thereof, and that the trial court did not err in submitting the issues of alleged negligence on the part of R. C. Allen to the jury for its determination. We are also of the opinion that there is ample evidence in the record to sustain the amount of the verdict returned by the jury against R. C. Allen. We are of opinion, how-

ever, that the undisputed testimony reflects that at the time of the wreck and injury of appellee R. C. Allen was not engaged in carrying on the business of Liggett & Myers Tobacco Company and was not acting within the scope of his employment.

It is true that at the time of the wreck and injury of appellee R. C. Allen was driving a truck which belonged to Liggett & Myers Tobacco Company, and that it contained goods and merchandise which R. C. Allen had purchased or taken up from customers of the company and which he had authority to sell and also true that on this particular trip there is evidence tending to show and from which the jury might have found that R. C. Allen collected some money for the company from Bob Moore who had a place of business near Harrisburg, yet after making the collection, instead of returning to Marked Tree the way he had gone out to Moore's place of business, he drove with his date through the old gravel pit road and parked his car over the protest of his lady friend on the roadside for about ten minutes and that during that time for some reason she jumped out of or left the truck and jumped on to the running board of a car that was passing them which was being driven by Hershel Wilmoth in company with Miss Charley Bell and Velma Rutkins.

Hershel Wilmoth testified without contradiction that, as he was going down the road, he saw a truck that was parked and had to slow down to go around same and that when he slowed down the girl hopped on the running board of his car and asked him to take her down the road; that he did not know what had happened and told her to get off, but she did not do it; but stayed on and asked him to take her down the road apiece, and he did so and asked what the trouble was, and she did not tell, and then she told him if he would take her to Marked Tree she would pay any price that he wanted so they went on down to about Ditch No. 26, he believed it was, and said that the guy that was driving the company truck overtook him and wanted to know where the girl was, and that he told him that he put her off about a quarter of a mile back up the road whereupon the man in the

company truck turned and went back to look for the girl and that he went on home; that she got off the running board of his car about three-fourths of a mile up the road which was at a point between the two bridges, that is between Bay Bridge and 26th Bridge.

Miss Charley Bell testified that when they passed the truck and slowed down she recognized that it was the Liggett & Myers Tobacco Company's truck, and that a girl hopped off of it and got on to the running board of the car they were driving and asked them to take her to Marked Tree and said that she would give them anything if they would take her; that they stopped and told her to get off, and she got off in front of a house near the 26th Ditch; that there were two bridges, the Bay Bridge and another over the 26th Ditch; that they drove down the road and the Liggett & Myers Tobacco Company's truck overtook them a short time after the girl had gotten off of the running board of their car; that the driver asked where they put her off and Hershel Wilmoth told him back up the road a short way; that he then turned his car around and went back up the road in the direction from which he had come, and that they themselves went on home.

We think this evidence clearly shows, and without dispute that at the time of the wreck and collision, R. C. Allen was driving up and down the road hunting for his date at which time, of course, he was not engaged in the business of his company or acting within the apparent scope of his authority conferred on him by his company. We can draw no other conclusion from this undisputed testimony that he was engaged at the time of the wreck and injury to appellee on his own private business and not doing anything for the company or within the scope of the authority conferred upon him by the company even though at this particular time he was headed in the direction of Marked Tree where he had arranged to spend the night and had a right to spend the night under his contract of employment.

We think according to the undisputed evidence R. C. Allen completed his work for the day at Lepanto and

then drove into Marked Tree for the purpose of spending the night which was permissible under his contract of employment; that after engaging his room for the night about five o'clock p. m. he made a date to drive out with her for his own pleasure during the evening; that he then took a bath, got his supper and met his date and drove out toward Harrisburg on his pleasure trip and in the course of the trip stopped at Moore's place and ordered a sandwich. He and his date ate the sandwich in the truck, and did not get out and go in and after eating same pursued his pleasure trip, parked on the highway where for some cause his date left the car and got on the running board of another, begged the driver to take her to Marked Tree and the driver, refusing to comply with her request, took her down the road and let her out near a house where she later procured transportation to Marked Tree; that after she had gotten out of the Liggett & Myers Tobacco Company's truck, R. C. Allen followed the other car in an effort to find the girl and in an effort to persuade the girl to get back in his car and finding that she had disappeared he drove up and down the road in search for her and during the search for her he ran into the bridge, wrecked his truck and injured appellee. Even though he made a collection from Moore for the Liggett & Myers Tobacco Company it was a mere incident, the main purpose of the trip being for his own pleasure. We do not think it a fair interpretation of this evidence to say that the collection, if made, was the main purpose of the trip, and that the pleasure trip was incidental only to the trip to collect an account for Liggett & Myers Tobacco Company. We think the undisputed evidence shows that the pleasure trip began at Marked Tree and continued until the car was wrecked and appellee was injured, but even if it did not begin at Marked Tree it is certain that after leaving Moore's place of business he turned aside completely from his employment and proceeded on private business of his own not connected in any way with the company's business until he wrecked the truck and injured appellee. The case comes clearly within the case of *Healey* v. *Cockrill*, 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115. The

rules of law announced in that case are applicable to the facts in the instant case and the instant case is controlled by the Cockrill case, *supra,* and a number of other cases which have approved the rules announced in the Cockrill case. The trial court should have given a peremptory instruction to return a verdict for the Liggett & Myers Tobacco Company.

The case is, therefore, affirmed as to R. C. Allen and is reversed as to Liggett & Myers Tobacco Company and as to it is dismissed.