LEWIS v. SHACKLEFORD

4-6560                                        157 S. W. 2d 509

Opinion delivered January 12, 1942.

*Dinning & Dinning* and *Brewer & Cracraft,* for appellant.

*John L. Anderson* and *Douglas S. Heslep,* for appellee.

GREENHAW, J. The appellant, A. B. Lewis, was engaged in the furniture business in the city of Helena, doing business as the Dixie Furniture Company, on November 18, 1940, at which time the appellee was seriously and permanently injured as a result of a collision between a truck owned by the appellant, and at the time of the collision being operated by Harley Lewis, and a motorcycle driven by the appellee.

Thereafter suit was filed in the Phillips circuit court by the appellee against the appellant, alleging in substance that about 7 p. m. on November 18, 1940, Harley Lewis, a son, agent and employee of the appellant, who was at the time on business for the appellant, was driving east on Perry street in the city of Helena at a high, dangerous and unlawful rate of speed, and negligently drove said truck over the north side of the center line of Perry street, thereby striking the motorcycle upon which the appellee was riding west, resulting in the appellee sustaining serious cuts about his head and face, and in his left leg being practically severed below the knee.

The appellant filed an answer denying the allegations of the complaint and pleading contributory negligence. The case was tried before a jury which returned a verdict in favor of the appellee for the sum of $8,500, upon which judgment was entered for said amount. Motion for a new trial was filed and overruled, from which is this appeal.

In addition to the grounds that the verdict was contrary to the law, to the evidence, and to both the law and the evidence, the appellant alleged that the court erred in failing to direct a verdict for the defendant. It is not contended that the verdict is excessive.

It was admitted during the trial that the appellant, A. B. Lewis, owned the Dixie Furniture Company, and that Harley Lewis was employed by the Dixie Furniture

Company for the purpose of driving one of its trucks, and that he was a salesman and collector for the appellant. The evidence showed that the place of business of the appellant was located on Cherry street in the downtown business section of the city of Helena. On the afternoon of November 18, 1940, Harley Lewis took a truck belonging to the appellant and two other employees of the appellant to Elaine and Oneida for the purpose of laying linoleum and installing some window shades. They went first to Elaine, thence to Oneida. They completed their work between 6 and 6:30 and started east on their return to Helena. It was undisputed that these three employees had gone out in the truck on business for the appellant, and that Harley Lewis drove the truck on this trip within the scope of his authority.

The evidence showed that the home of the appellant was on the west side and in the outskirts of Helena, and in returning to the business section of the city the employees passed the home of the appellant; that the truck which the son and employee of the appellant was driving at the time was usually kept at the appellant's home at night. The driver of the truck at the time lived with his father, and it was contended on behalf of the appellant that when he reached a point in the street opposite the driveway at the home of the appellant, he should have driven the truck in the yard of the appellant, thereby ending his day's work, and that his driving the truck on to the downtown section of the city was not on business for appellant, but on the driver's personal business.

The evidence showed that the driver of the truck did not stop at the home of the appellant, but continued on east in the general direction of appellant's place of business in the business section of the city, where the trip originated. The employees who were riding with the driver testified that they intended to get out of the truck when they reached Franklin street, which is the nearest point *en route* to appellant's place of business from their home. They had not yet reached Franklin street at the time of the collision.

Harley Lewis, the driver of the truck, testified on direct examination that instead of stopping at the home

of his father and leaving the truck there for the night, he decided to drive on into town in order to get a sandwich and place a long distance telephone call. According to the evidence of the employees who were riding with Lewis, they were proceeding along Perry street on their return journey, and they intended to get out of the truck when they reached Franklin street. These employees further testified that when they returned to town from a trip to the country on business for the appellant, Harley Lewis would usually let them out where they desired.

On cross-examination Harley Lewis testified as follows: "Q. Mr. Lewis, at the time the accident happened you were regularly employed by the Dixie Furniture Company? A. That is right. Q. What was your job as salesman and collector, to drive that truck? A. Yes, sir. Well, not necessarily to drive the truck. I drove the truck in my duties. Q. On this particular day you had been to Elaine and Oneida on company business? A. Yes, sir. Q. This accident happened while you were returning from Elaine and Oneida on company business? A. Yes, sir."

The question of whether the driver of the truck was acting within the scope of his employment and on business for the appellant at the time of the collision was submitted to the jury under proper instructions. This was a question of fact for the jury to determine. It necessarily found that the driver was still operating the truck upon business for the appellant when appellee was struck and injured, and that his injuries were due solely to the negligence of the driver. There was substantial evidence to support such a finding, and the court did not err in refusing to hold as a matter of law that the driver was not on business for the appellant at the time of the collision and resulting injuries to appellee.

Appellant cites as applicable to the facts in the instant case the cases of *Hunter* v. *First State Bank*, 181 Ark. 907, 28 S. W. 2d 712; *Brooks* v. *Bale Chevrolet Company*, 198 Ark. 17, 127 S. W. 2d 135; and *Allen* v. *Ross*, 200 Ark. 104, 138 S. W. 2d 409. We think the facts in these cases are clearly distinguishable from the facts here. In *Mullins* v. *Ritchie Grocer Co.*, 183 Ark. 218, 35 S. W. 2d 1010, this court said: "The doctrine is settled

in this state that, if the automobile causing the accident belongs to the defendant and is being operated at the time of the accident by one of the regular employees of the defendant, there is a reasonable inference that at such time he was acting within the scope of his employment and in the furtherance of his master's business.''

This doctrine was restated by this court in the case of *Rex Oil Corporation* v. *Crank,* 183 Ark. 819, 38 S. W. 2d 1093, in which this court further said: ''These circumstances, which were established by the testimony, raised certain inferences of fact, and, this being so, it was the province of the jury to weigh these inferences of fact with the conflicting direct testimony and to say whether such direct testimony overcame the inferences of fact raised by the circumstances proved. The court below did not err in submitting the case to the jury, and there is evidence of a substantial nature tending to support its verdict.''

The appellee testified that he was 28 years of age, and at the time of his injury, in good health and earning around $50 to $55 per month. He had started to West Helena, going west on Perry street. Two young women were riding on the motorcycle with him immediately prior to the collision. His hat blew off and he pulled to the curb to let them off and returned to get his hat. After he had done so, and while he was returning for them, going west on Perry street, the collision occurred. He was driving the motorcycle at around 20 miles per hour, on his side of the street, when the driver of the truck suddenly drove the truck from behind a car operated by Fred Ellis going in the same direction, and in endeavoring to pass the Ellis car, drove the truck over on the north or left side of Perry street in the right-of-way of the appellee. The truck was going 60 or 65 miles an hour. The appellee endeavored to pull to the curb in order to avoid being struck by the truck, but the rear-view mirror of the truck cut his head and face, and his left leg was almost completely severed below the knee and was later amputated above the knee.

The two young women who were with him, one of whom is now his wife, corroborated his testimony. They

testified they were near the scene of the collision and saw everything that happened; that the appellee was driving in a careful manner on his side of the street, and the driver of the truck was going east on Perry street at a speed which was estimated to be around 60 or 65 miles an hour, and in endeavoring to pass the Ellis car drove the truck over on the north side of the center of the pavement, striking the appellee and the motorcycle which he was riding near the north curb of Perry street. Two other witnesses testified substantially to the same facts.

The evidence on the part of the driver of the truck and the two other employees of the appellant who were in the truck was to the effect that the driver of the truck was not negligent, and that the collision and resulting injury were due to the negligence of the appellee. There was other evidence which tended to corroborate this testimony in behalf of appellant.

The questions of negligence and contributory negligence were, of course, questions of fact for the jury to determine. The case was submitted to the jury under proper instructions defining negligence and contributory negligence; in fact, the court gave every instruction requested by the appellant except that it refused to direct a verdict for him. There was substantial evidence to support the verdict of the jury. This court has repeatedly held that where there is substantial evidence to support the verdict, it will not reverse because there is a conflict in the evidence, or because the verdict is seemingly against a preponderance of the evidence. It is the province of the jury to pass upon the evidence and determine its truth or falsity.

In the case of *Sauve* v. *Ingram*, 200 Ark. 1181, 143 S. W. 2d 541, this court said: "It would serve no useful purpose to set out the testimony on the question of negligence. The evidence was in conflict and the evidence of appellees shows that appellant was grossly negligent. The questions were properly submitted to the jury, and a verdict based on conflicting evidence will not be set aside by this court."

In *Elkins* v. *Nelson*, 196 Ark. 209, 118 S. W. 2d 287, this court held: "Moreover, it is the province of the

jury to pass on the credibility of the witnesses and weight of their testimony, and if their verdict is supported by substantial evidence, it .must be permitted to stand."

We cannot agree with the contention of the appellant that there is such a variance between the physical facts and the evidence offered on behalf of the appellee as to constitute ground for reversal of this case. See *Ocker* v. *Nix,* 202 Ark. 1065, 155 S. W. 2d 58, and cases there cited.

·Finding no error, the judgment is affirmed.