BRUNDRETT v. BRIGGS.

4-6614                                    158 S. W. 2d 708

Opinion delivered February 9, 1942.

R. W. Tucker, for appellant.

Preston W. Grace, for appellee.

GREENHAW, J.    This is an appeal from two judgments for personal injuries growing out of a collision between a school bus operated by Ross Williams, containing a number of school children, and a passenger bus operated by the appellant, which was transporting passengers. Charles Briggs, the father of the Briggs children, brought suit for himself and as next friend for his minor children for damages they sustained, and Lillie Harbin, the mother of the Harbin children, sued for herself and as next friend for these minors. The cases were consolidated for trial and verdicts rendered in favor of the appellees, the verdict in the Briggs case being for $100 and in the Harbin case for $400.

The negligence complained of was that the appellant was driving his bus in a reckless and negligent manner, at a high and excessive rate of speed, on a foggy morning when visibility was less than 100 feet, without lights, and was driving on the wrong side of the highway. The appellant denied these allegations and contended that the collision resulted from the negligence of the driver of the school bus in attempting to pass another car on a viaduct.

The only ground for reversal urged by appellant is that the lower court erred in overruling his motion for directed verdicts, for the reason that there was no substantial evidence to sustain the verdicts.

The collision occurred early on the morning of February 5, 1941, on a concrete viaduct which is about a mile in length over the White river bottoms approximately one mile south of Batesville. The viaduct is straight, the concrete roadbed 20 feet in width, with a black line down the center, and on each side of the viaduct is a concrete rail or banister.

The driver of the school bus testified that he was going south on the viaduct, and after he had proceeded about one-third of the distance across the viaduct came up behind a truck which appeared to be stalled on the viaduct. He passed the truck, and as he was in the act of cutting back onto his side of the highway he saw the Brundrett bus coming up the middle of the road, and swerved over as far as he could in an endeavor to avoid a collision, but the front end of the appellant's bus struck the school bus on the left side of the body near the driver's seat, causing the wreck and the resulting injuries to the appellee school children. He further testified that there was a very heavy fog that morning and visibility was bad at the point of collision; that a person could see for a distance of probably 50 or 60 feet.

All of the evidence showed that it was very foggy that morning at the scene of the collision, and estimates as to the visibility ranged from 50 to 150 feet.

John Moore, a deputy sheriff, testified that he went to the scene of the collision when they were untangling the busses, and that his investigation revealed that the Brundrett bus had skidded 30 feet 6 inches, and the skid marks were between 18 to 20 inches over the center of the viaduct on his (Brundrett's) left, running parallel with the center of the viaduct, and that the left corner of the body of the school bus was caved in.

Lloyd Allen, sheriff of Independence county, testified that he arrived on the scene about 10 or 15 minutes after the collision, before the busses had been moved.

They were locked together in the middle of the viaduct. The Brundrett bus had struck the school bus about the door, near the driver's seat. The Brundrett bus was setting about 18 inches on the left of the center line. He examined the skid marks running back from the bus, and they ran back a little over 30 feet and appeared to be about parallel with the viaduct.

O. E. Jones, a newspaper editor of Batesville, testified that he went to the scene of the collision a short time after it occurred and made some pictures. He observed the tracks leading up to the rear wheels of the Brundrett bus, and they appeared to be 12 to 18 inches on the left of the center line, although he did not measure the distance.

Elmer Miller testified that he was a passenger on the Brundrett bus, and that Brundrett was driving at about 40 miles per hour as he approached the viaduct.

Several other witnesses testified for appellee, and appellant's testimony controverted the allegations of negligence, but we deem it unnecessary to quote further from the testimony. Suffice it to say that in our opinion there was substantial evidence to support the verdicts of the jury, and the court did not err in refusing to direct verdicts for the appellant.

The evidence as to negligence in this case was in dispute. In determining the question as to whether there was substantial evidence of negligence, this court views the evidence in the light most favorable to the appellee in whose favor the verdict was rendered. *Graves* v. *Jewell Tea Co.,* 180 Ark. 980, 23 S. W. 2d 972.

In *Elkins* v. *Nelson,* 196 Ark. 209, 118 S. W. 2d 287, this court said: "Moreover, it is the province of the jury to pass on the credibility of the witnesses and weight of their testimony, and if their verdict is supported by substantial evidence, it must be permitted to stand."

The judgments are, therefore, affirmed.