BRUNDRETT *v.* THOMPSON.

4-6615                                    159 S. W. 2d 65

Opinion delivered February 9, 1942.

*R. W. Tucker,* for appellant.

*Dene H. Coleman, Preston Grace* and *Chas. F. Cole,* for appellee.

GREENHAW, J. This appeal involves judgments rendered in favor of five persons who were passengers on a bus belonging to I. N. Brundrett for injuries claimed to have been received by them on February 5, 1941, in a collision with a school bus operated by Ross Williams on a viaduct about one mile south of Batesville, being the same collision referred to in the case of *Brundrett* v. *Briggs, et al., post,* p. 773, 158 S. W. 2d 708.

The evidence as to the cause of the collision was practically the same in both cases, and we deem it unnecessary to set out any of the alleged acts of negligence upon which the verdicts were based. Suits for damages were filed by each of the appellees, and also by Martha Ann Seymore and her husband. These cases were consolidated and all tried together. The jury returned verdicts in favor of each of the plaintiffs, ranging in amount from $100 to $3,000. The $3,000 verdict was in favor of Martha Ann Seymore, an injured passenger, and her husband, W. C. Seymore. Judgments were entered upon these verdicts, and from all of these judgments, except the judgment in favor of Martha Ann and W. C. Seymore, an appeal was prosecuted to this court. In the Seymore case a settlement was effected after judgment was rendered, for less than the judgment.

A number of errors have been alleged as grounds for reversal of this case. In his amended motion for new trial the appellant alleged that one of the jurors, Johnnie Mitchum, was a second cousin of Martha Ann Seymore, one of the plaintiffs, and was, therefore, ineligible to serve as a juror because he was related to her within the fourth degree of consanguinity and prohibited by

§ 8292 of Pope's Digest; that this juror stated upon his *voir dire* that he was not related in any manner to any of the parties to the litigation, and that said statement was false and known to be false by the juror; that defendant used due diligence to find out if any relationship existed and that this relationship was collusively concealed from the court, the defendant and his attorney; that Rena Kelly and George Lawrence knew of this relationship, but had refused to sign an affidavit showing it, and that he had had them subpoenaed as witnesses for the hearing.

At the hearing upon the motion for a new trial, Rena Kelly testified that she and Martha Ann Seymore's father were brother and sister, and that she (witness) is a first cousin of Johnnie Mitchum. "Q. Then Martha Ann Seymore's father and Johnnie Mitchum would be first cousins, would they not, the same relation as you? A. Yes. Q. Then Johnnie Mitchum would be a second cousin to Martha Ann Seymore, would he not? A. I guess so."

George Lawrence testified that he knew Johnnie Mitchum was a member of the jury in question, and had known him for seven or eight years. He also knew the father of plaintiff, Martha Ann Seymore, and that Martha Ann Seymore and Johnnie Mitchum were second cousins, according to what he had been told. An objection to his testimony was sustained. However, there was no testimony in this case which contradicted the testimony of Rena Kelly to the effect that plaintiff, Martha Ann Seymore, and the juror, Johnnie Mitchum, were second cousins. The lower court held that Mitchum was not related to Mrs. Seymore within the degree prohibited by law. With this holding we cannot agree.

The appellant contends that the juror, Johnnie Mitchum, was interrogated on his *voir dire* as to his relationship with each of the plaintiffs in the consolidated cases, and that this juror testified that he was not related to any of the plaintiffs. This question was gone into at the hearing upon the motion for new trial. The court reporter stated that he had not taken down the questions propounded to and the answers made by the

jurors on their *voir dire,* and that the record failed to show that jurors were examined as to relationship, bias, or prejudice; whereupon appellant asked that the record show that jurors were questioned by the court and by appellant as to relationship, bias, or prejudice. An objection by appellee was sustained by the court.

In support of appellant's contention that Mitchum was so interrogated and denied that he was related to any of the plaintiffs, the affidavits of two bystanders were read in evidence, pursuant to § 1547 of Pope's Digest. Verner Bruce, in his affidavit, testified that he was a bystander in the court room during the trial of these causes; that the jurors were questioned by the court and were also questioned separately by the attorney for the defendant as to relationship with the plaintiffs or any of them; that Johnnie Mitchum was one of the jurors and was asked if he was any relation to any of the plaintiffs, and he stated that he was not. To the same effect was the affidavit of Edgar Baker.

Section 1547 of Pope's Digest reads as follows: "If the party excepting is not satisfied with the correction, upon his procuring the signatures of two bystanders attesting the truth of his exception as by him prepared, the same shall be filed as part of the record; but the truth of the exceptions may be controverted and maintained by affidavits, not exceeding five in number on each side, to be filed with the clerk within ten days after the filing of the exception, which affidavits shall be a part of the record."

No affidavits controverting the affidavits of bystanders Bruce and Baker were filed. Therefore, their affidavits must be taken as true by this court. This court has had occasion in a number of cases to pass upon this question. One of our latest cases is that of *Bennett and Holiman* v. *State,* 201 Ark. 237, 144 S. W. 2d 476, 131 A. L. R. 908, in which the court said: ". . . this court has held that if the bystanders' exceptions are not controverted they are to be taken as true in the Supreme Court even though they are in conflict with the bill of exceptions signed by the trial judge. *Perry* v. *State,* 188 Ark. 133, 64 S. W. 2d 328."

The evidence shows that Martha Ann Seymore was a second cousin to the juror, Johnnie Mitchum. Hence he was related to her within the prohibited degree. *Holt v. Watson,* 71 Ark. 87, 71 S. W. 262.

Counsel for appellees urge that even if Johnnie Mitchum was related to Martha Ann Seymore within the degree which would disqualify him from serving as a juror in her case, that fact could not affect the action of the jury in returning verdicts for the other plaintiffs who were not in any manner related to said juror, and that since a settlement with Martha Ann Seymore was effected and no appeal taken from the verdict and judgment in her case, the verdicts of the jury in favor of the other plaintiffs should not be invalidated because of the relationship between Mitchum and Mrs. Seymore.

We have given this contention serious consideration and have reached the conclusion that these cases having been consolidated and tried together, the void verdict in favor of Mrs. Seymore tainted all the other verdicts. At least, we are unable to say that the verdict of the juror, Mitchum, in all of these cases was not influenced by the relationship existing between him and Mrs. Seymore which disqualified him in her case. It is obvious that if one of these plaintiffs were injured by the negligence of the appellant and entitled to recover therefor, all parties so injured would be entitled to recover. Hence, in order to reach a verdict in favor of the plaintiff, Seymore, the jury had to find there was negligence for which Brundrett was liable, and if liable in the Seymore case it follows he would be liable in the other cases where damage is shown. It is, therefore, our opinion that the settlement with Mr. and Mrs. Seymore did not remove the prejudice resulting from participation in all of these verdicts by a disqualified juror.

Since we have concluded that this case will have to be reversed and remanded for a new trial on account of the disqualification of Mitchum, it becomes unnecessary to discuss the other alleged errors.

The judgments are, therefore, reversed, and the causes remanded for a new trial.