LLOYD *v.* JAMES.

4-5469                    128 S. W. 2d 1019

Opinion delivered May 8, 1939.

*M. F. Elms,* for appellant.

*Botts & Botts,* for appellee.

MEHAFFY, J.   On August 6, 1936, the appellants sold and delivered to appellee an International truck for $789, retaining title to the truck.   There was a payment made on the truck, but thereafter the appellee declined to pay and the appellant brought suit in replevin for the truck.

There was a trial by jury, and appellants were awarded possession of the truck, but appellee was given a judgment for $300 on his cross-complaint.

The answer and cross-complaint admitted the purchase of the truck and admitted that appellants retained title, but alleged that the appellants, at the time appellee purchased the truck, represented and guaranteed that the truck would operate decidedly more economically than a Ford V-8 truck, and would operate at a savings in oil and gas to such an extent as to pay the purchase price of the truck within a short time.

This is the second appeal in this case.   When the suit was brought originally, appellants filed demurrer to cross-complaint.   The court sustained the demurrer, and appellee prosecuted an appeal to this court.   This court reversed the judgment of the lower court, remanding the cause with directions to overrule the demurrer.   *James* v. *Lloyd,* 196 Ark. 568, 118 S. W. 2d 284.

The purchase of the truck and the execution of the note were admitted, and appellee's contention was that the truck did not come up to the guaranty.

The appellee, W. F. James, testified that he bought the truck from a Mr. Harris, representative of appel-

lants; that Harris came to see him and talked about the truck and he came again in a few days; made two trips before he sold witness the truck; told him what the International truck would do and how much better it was than a Ford V-8 and how much mileage it would make and said that he would guarantee it to make better mileage than any Ford V-8 that was ever built; Harris said he came down to sell witness this truck, and witness told him if he kept on he would sell him the truck; witness then told Harris that if he would guarantee the International truck to make more mileage than a Ford V-8 he would buy the truck; that was the guaranty he put on it; Harris said that they stayed with what they said and what they sell, and witness stated that that was the reason he bought the International truck. Before the truck came appellee paid $25 and in about ten days paid $400 more; built a bed for the truck that cost $75, and $8 additional, which amounted to $508. The truck did not come up to Mr. Harris' guaranty with reference to the gasoline; witness saw Mr. Harris in a few days and told him about the truck and Harris directed him to bring it in and they would check it up; they worked on it six different times and it never did come up to the guaranty; he offered the truck back if they would give him his money, but when he offered the truck back, Mr. Moseley laughed at him and demanded that he pay the note; Mr. Harris made the guaranty and he kept trying to get them to fix it; Mr. Moseley directed witness to Little Rock and wrote a letter to the International people there to work on the truck; witness intended to buy a Ford V-8, but with this guaranty, he bought the International; if it had not been for the guaranty he would have bought a Ford V-8; it took 39 gallons of gas to go to Memphis and back; it took 29 gallons for the Ford with the same weight; had the truck in his possession about six months and drove it about 7,600 miles; witness kept thinking they were going to fix it and bring it up to the guaranty; he kept the truck as long as he did because he thought they would fix it; they kept telling him they would; they did not do it, but kept insisting that they would make it come up to their guaranty.

Other witnesses corroborated appellee as to the statements about the International truck, but Mr. Harris, who sold the truck to appellee, denied making the statements.

When the case was here on appeal before this court stated: "The only question for our consideration is whether the cross-complaint states facts sufficient to constitute a defense. The appellee contends that the statements made were mere dealer's talk, and that may be true, but the appellant alleged that they not only made these statements, but that they warranted them to be true. He also states in his cross-complaint that he called the attention of the seller to this defective condition of said truck, and that the seller undertook on four different occasions to remedy the defect, but was utterly unable to do so. He, in effect, alleges that there was a defective condition of said truck, and the appellees were unable to remedy it.

"Whether there was a warranty or whether the truck was defective are questions of fact, and should be submitted to the jury, if there is substantial evidence to prove them."

We agree with the appellants that the only complaint made or attempted to be made by appellee was that the International truck used more gasoline than a Ford V-8.

Appellee contends and testifies that the seller guaranteed that it would require less gasoline to operate the International than it would to operate a Ford V-8, and that but for this guaranty he would not have purchased the truck. While other witnesses testified that Harris said it was better than any Ford, yet the appellee is the only witness that testifies positively that a guaranty was made and that this caused him to purchase the truck. As we said on the former appeal: "Whether there was a warranty or whether the truck was defective are questions of fact, and should be submitted to the jury, if there is substantial evidence to prove them."

In the case of *Missouri & N. A. Rd. Co.* v. *Johnson*, 115 Ark. 448, 171 S. W. 478, this court said: "We will not reverse the judgment because of the insufficiency of the evidence, for, as we view this evidence, it is not physi-

cally impossible that appellee was injured as the result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner."

While the evidence of appellee is contradicted by other witnesses, yet it was a question of fact for the jury and we have repeatedly held, in testing the sufficiency of the evidence to support the verdict, that we must view the evidence in the light most favorable to the appellee. We do not pass on the facts, on the credibility of the witness, or the weight of their testimony; but if there is any substantial evidence to sustain the verdict of a jury, its finding on the facts is conclusive here.

Appellee cites and quotes from numerous cases. It may be said there is some conflict in authority. However, the only question to be determined in this case is whether there was a guaranty. The jury was instructed by the court, at the request of appellants, as follows: Instruction No. 5. "You are instructed that before expressions rise to the dignity of a warranty or guaranty, they must amount to a specific, definite and certain representation of a fact that is material, and, if you find from all the testimony in this case that the expressions of the salesman who sold defendant the truck in controversy did not definitely and certainly point to some material quality of the truck on which the defendant might rely and did rely, your verdict should be for the plaintiffs."

The court also, at the request of appellants, gave instruction No. 7, as follows: "You are instructed that the burden is upon the defendant in this case. He admits the purchase of the truck and the execution of the note sued on and sets up the breach of a warranty or guaranty alleged to have been included in the contract of sale. This means that the defendant must establish in your minds to a reasonable certainty his claims of the warranty and its breach, and this must be done by a preponderance of the evidence. If the evidence on the part of defendant on his claims of a breached warranty does not outweigh the evidence on behalf of the plaintiffs in your minds or if the evidence on the alleged breach of warranty seems to

be equal in your minds, then your verdict should be for the plaintiffs.''

There were numerous instructions given, and we think the court correctly instructed the jury.

"The fact that the appellate court would have reached a different conclusion had the judges thereof sat on the jury, or that they are of the opinion that the verdict is against the preponderance of the evidence, will not warrant the setting aside of a verdict based on conflicting evidence." 4 C. J. 859, 860.

"The verdict of a jury cannot properly be disturbed on appeal merely because of its appearing to be against the clear weight of the evidence, or because if we were to pass upon the matter as seen in the printed record, we might find differently than the jury did. If the verdict has any credible evidence to support it, any which the jury could in reason have believed, leaving all mere conflicting evidence, evidence short of matter of common knowledge, conceded or unquestionably established facts and physical situations, it is proof against attack on appeal, and that must be applied so strictly, on account of the superior advantages of court and jury for weighing the evidence, that the judgment of the latter approved by the former is due to prevail, unless it appears so radically wrong as to have no reasonable probabilities in its favor after giving legitimate effect to the presumption in its favor and the makeweights reasonably presumed to have been rightly afforded below which do not appear, and could not be made to appear, of record." *Barlow* v. *Foster*, 149 Wis. 613, 136 N. W. 822; *Baldwin* v. *Wingfield*, 191 Ark. 129, 85 S. W. 2d 689.

No formal words are necessary to create a warranty, but it is only necessary to use words that are sufficient to show the intention of the parties. 55 C. J. 674, 675.

The warranty may be made orally, or in writing. 55 C. J. 675.

If the appellee's testimony is believed, and the jury had a right to believe it, the seller guaranteed that the truck could be operated less expensively than a Ford V-8; that it would use considerably less gasoline. Appellee

testified that the seller made this warranty, and that he would not have purchased the truck if this warranty had not been made; that he told the seller that he would buy it if he would guarantee that it would use less gasoline than a Ford V-8 truck.

The facts or statements relied on in this case to prove the warranty rest wholly in parol, and it was, therefore, a question for the jury to determine whether there was an express warranty. 24 R. C. L. 165.

We find no error, and the judgment is affirmed.

GRIFFIN SMITH, C. J., McHANEY and HOLT, JJ., dissent.