GRIFFITH LUMBER COMPANY, An
Arkansas Corporation *v.* B. F. CONNOR

73-124                    502 S.W. 2d 500

Opinion delivered December 3, 1973
[Rehearing denied January 14, 1974.]

624

*Butler and Hicky,* for appellant.

*Rieves & Rieves,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Griffith Lumber Company contends that a judgment, awarding appellee Connor $3,000 as damages on Connor's suit alleging breach of contract for construction of a summer home for Connor on Horseshoe Lake in Crittenden County, is erroneous. Its points for reversal assert insufficiency of the evidence to support the verdict and error on the part of the trial court in instructing the jury. We find no reversible error.

It is undisputed that Connor entered into a contract in February, 1969, with Griffith Lumber Company, acting through the manager of its Hughes office, W. D. Lunsford, to erect the house, according to plans and specifications prepared by an architect, who did not make any specifications as to air conditioning. Connor contended that, under the contract, the lumber company was to design and install adequate heating and air conditioning. He alleged that appellant breached the contract by failing to substantially complete the building, by not following the plans and specifications and through defective workmanship. He also alleged that Griffith Lumber Company had acknowledged by a letter dated December 16, 1969, that the air-conditioning system was defective. Appellant's defense was, to a great extent, bottomed upon the contention that Connor had accepted the work, except for the air conditioning, and that the air-conditioning system

was adequate for the area it was intended to serve. By an amended complaint, Connor alleged damages totalling $5,236 of which $3,150 was for purchasing and installing a new air-conditioning system, $483 for repairing a fireplace, installing an exhaust fan in a bathroom and finishing a runway in an attic; $1,000 for installing a pocket door and reworking and repairing inside construction to conform to the plans and specifications; $28 for installing insulation for ducts according to the plans and specifications; and $575 for repair to windows to make them watertight, installing base and base shoe and repairing water damage.

The jury returned its verdict for Connor for $3,000. The evidence was in sharp contradiction on many points. Appellant states its point for reversal for insufficiency of the evidence thus: "The verdict of the jury was contrary to the law and the weight of the evidence." Of course, we cannot consider the weight of the evidence and must affirm if there is any substantial evidence to support the verdict. *Horn* v. *Shirley,* 246 Ark. 1134, 441 S.W. 2d 468; *Wasson* v. *Warren,* 245 Ark. 719, 434 S.W. 2d 51; *Dunaway* v. *Troutt,* 232 Ark. 615, 339 S.W. 2d 613. We find substantial evidence to support a verdict in the amount for which it was rendered.

Appellant first contends there was no evidence to show that there were any latent defects in the work. The alleged latent defects of which Connor complained, other than the air conditioning, consisted largely of the items for which he claimed damages. Connor told of having occupied the house for about two weeks in late June or early July, 1969, while appellant's employees were still doing some work there, and, after an absence of four or five days, having returned and found that water had run down through the ceiling in two bedrooms and a hallway. He said he found later that a pocket door was useless because it had been improperly located and installed, that cold air was coming into the bathroom because of the lack of a set of louvers on a suction fan in the attic, that brick falling in the fireplace caused it to disintegrate when the first fire was built, that water was coming through windows in the porch (or playroom), that linoleum flooring had curled up because of appellant's failure to install

quarter round or base shoe and that plywood flooring had not been installed in the attic as called for by the plans. Except for the pocket door, Connor maintained he did not discover these defects until after December 16, 1969, the date of the final payment of the contract price by him, and the delivery of a letter by Lunsford, acknowledging problems with the air conditioning and the responsibility of appellant to see that the unit operated satisfactorily and to replace it if it did not.

Connor said he complained to Lunsford, who promised to correct the defects, but Lunsford died before he could do so. Connor admitted that some corrections had been made, but testified that, after Lunsford's death, he talked to Mr. Griffith, the president of appellant, who promised to take additional corrective measures, but failed to do so. Herschel Manning, a licensed Arkansas contractor engaged in commercial and residential building in the area and a Carrier Air Conditioning dealer, testified that the reasonable cost of replacing the three-ton air-conditioning unit with a five-ton was $3,150. His estimates of costs for repairing other defects and for supplying deficiencies in the work generally support the amounts claimed by appellee.

Appellant contends, however, that Connor waived any claim for all these alleged defects and omissions, except for the air conditioning, by taking possession of the property in June of 1969 and making final payment on the contract price on December 16, 1969. We cannot agree that there was a waiver here as a matter of law. Most of the authorities relied upon by appellant on this subject are based upon the assumption that the owner accepted the work with knowledge that it had not been done according to contract, or under circumstances from which such knowledge would necessarily be imputed, or upon contract provisions different from those here. Some of them clearly recognize that the general rule as to waiver of defects by acceptance does not apply to latent defects. See, e.g., 13 Am. Jur. 2d 59, Building and Construction Contracts, § 55; *Guschl v. Schmidt*, 266 Wis. 410, 63 N.W. 2d 759 (1954). In the case of latent defects, according to these authorities, before there can be a waiver, the defect must

be known by the owner or discoverable by him by reasonable inspection, or there must have been a reasonable time and opportunity for discovery by due diligence. Others recognize the owner's right to recoupment, set-off or recovery of damages on account of the defective character of the work due to material noncompliance with the contract when timely objection was made, even though, because of use and occupancy, he may not be heard to deny the contractor's right to recover the contract price. See *Bush* v. *Finucane,* 8 Colo. 192, 6 P. 514 (1885); *Katz* v. *Bedford,* 77 Cal. 319, 19 P. 523 (1888); *Guschl* v. *Schmidt,* supra. Some of these authorities clearly recognize the existence of questions of fact as to whether the defects complained of were latent, and whether timely objections were made by the owner. This seems to be consistent with our holdings in similar situations. *Dutton* v. *Million,* 114 Ark. 330, 169 S.W. 1183.

In one of the few cases on the subject in Arkansas, it was held that when work contracted for has been done substantially in accordance with the terms of the contract, or where there has been an acceptance of the work by the owner, the contractor may, notwithstanding defects therein, recover the contract price, less the cost of correcting such defects. *Fitzgerald* v. *LaPorte,* 64 Ark. 34, 40 S.W. 261. In that case, it was said that continued use of the building did not necessarily constitute an acceptance of the work.

If Connor's testimony was found worthy of belief, there was a question of fact involved. It is true that the contract provided for payment of $2,500 when the house was turned over to Connor and accepted, but it also provided that a balance of $1,500 "be held" for 120 days after Connor received the house. This was a clear provision for possible deficiencies and omissions in performance of the contract. This payment was not made until December 16, 1969, and was made then, according to Connor, because Lunsford said he needed the money. Connor said that, at the time, he was unaware of any of the defects he discovered except for the air conditioning and the pocket door, and that Lunsford had made a number of repairs to the house between June and December. It is logical to believe that some of the matters of which Con-

nor complained would not have been discovered until winter weather caused them to be revealed. Connor also claimed that when he moved into the house, Griffith had retained and still had a key to the house.

In *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W. 2d 518, in treating the matter of waiver, we had this to say:

Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. Sirmon v. Roberts, 209 Ark. 586, 191 S.W. 2d 824. In the cited case, we said that conduct amounting to waiver should be carefully inspected and all evidence upon the subject impartially scrutinized.

We readily agree that there was substantial evidence tending to show that Connor had accepted the work and had waived appellant's noncompliance with the contract, if any, except as to air conditioning. But there was definitely a fact question on the score, which was resolved against appellant by the jury.

Appellant's argument relating to evidence about the inadequacy of the air-conditioning system is based for the most part upon its contention that the only witness who testified that the air conditioner to be supplied by appellant was to be a unit with a five-ton capacity was Connor and that his testimony was sharply contradicted by Delton Cummings and Marion Bobby Latham, that the initial plans called for a place on a glass-enclosed porch or playroom for the two-ton unit, admittedly installed by Connor, that the three-ton unit installed by appellant was quite adequate for the rest of the house and that a five-ton air conditioner in addition to the two-ton unit would have been far in excess of Connor's needs and would have increased his contract price. Appellant points out that the lips of Lunsford, its manager, have been sealed by death, but argues that Connor's testimony is outweighed by the fact that the building plans called for the separate window air conditioner on the porch, together

with the testimony of Latham that, at the request and upon the instruction of Lunsford, he figured the air-conditioning load for the house exclusive of the porch and that the three-ton unit was more than adequate for that purpose.

But we cannot reject the testimony of Connor or find it insubstantial solely because we might think that it is outweighed by other evidence or on the basis of credibility. The determination of credibility was totally within the province of the jury. *Bradberry* v. *Gower,* 247 Ark. 700, 447 S.W. 2d 124; *St. Louis-Southwestern Ry. Co.* v. *Holwerk,* 204 Ark. 587, 163 S.W. 2d 175; *Lewis* v. *Shackleford,* 203 Ark. 500, 157 S.W. 2d 509; *Lloyd* v. *James,* 198 Ark. 255, 128 S.W. 2d 1019. We could only reverse the jury verdict upon the conflicting evidence presented if we could say there was *no* reasonable probability that the facts could be as related by Connor and as the jury found, even though we might think that his version was highly improbable. *Green* v. *Harrington,* 253 Ark. 496, 487 S.W. 2d 612; *Beard* v. *Coggins,* 249 Ark. 518, 459 S.W. 2d 791; *Blissett* v. *Frisby,* 249 Ark. 235, 458 S.W. 2d 735; *Fields* v. *Sugar,* 251 Ark. 1062, 476 S.W. 2d 814; *Rhodes* v. *Bernard,* 248 Ark. 869, 454 S.W. 2d 318, 47 A.L.R. 3d 961. So long as a party's testimony relates to matters that might or might not have existed, and his right to recover is dependent upon the truth or falsity of his testimony, it is evidence of a substantial character and, if believed by the jury, is sufficient basis for a recovery by him. *Independent Stave Company* v. *Fulton,* 251 Ark. 1086, 476 S.W. 2d 792.

Connor testified that:

He had no experience in heating or air conditioning. He had an architect in Memphis, Tennessee, where Connor lived, draw up plans and specifications for the house, which covered everything with the exception of air conditioning. He negotiated the contract with Lunsford, gave him a set of blueprints and told him that it was up to the contractor to furnish a set of prints showing heating and air conditioning, but that, in no event should there be less than five tons of air conditioning, after which Connor told Lunsford that he was marking his own set of plans

accordingly and Lunsford said, "I'm marking mine." Lunsford "reached over" and, Connor assumed, did mark the print which Lunsford worked from and had in his possession until he ended the job. The set of plans in Connor's possession bore the notation "no less than five ton air conditioning" in Connor's handwriting but he did not put it on any other set, even the extra set which he furnished his attorney and which was exhibited to appellant's attorney when Connor's discovery deposition was taken.

The contract dated February 27, 1969, which Connor testified was drawn by Lunsford, provided for the house to be built according to plans and specifications for $19,-000, with everything furnished except floor covering. Connor stated he did not know that the air-conditioning unit appellant installed had a three-ton capacity rather than a five-ton capacity until Delton Cummings, a Carrier Air Conditioning dealer, was sent by the distributors to calculate the load at the house long after the house construction was completed and after Lunsford's death. He also testified he installed a second unit on the porch as an auxiliary unit at his own expense and Lunsford understood this. It was for the jury to decide whether to believe this witness. Since they apparently chose to do so on this point, we are bound by their decision.

Appellant's complaint about jury instructions falls upon the basis of what we have said heretofore. Its requested instruction number one is premised upon the assumption that Connor was barred from any recovery except for any breach of the contract relating to air conditioning and for that reason would not have been a correct instruction. Appellant's objection to instructions given at the request of appellee is not well taken because it is based entirely on the same premise. Appellant's argument on both points is based upon its contention that there was a waiver of any defects as a matter of law. It appears to us that the issues were properly submitted to the jury.

Since we find no error, the judgment is affirmed.