## Joe McMILLAN *v.* MEUSER MATERIAL & EQUIPMENT Co., Inc.

76-21                                          541 S.W. 2d 911

### Opinion delivered September 27, 1976
[Rehearing denied November 1, 1976.]

*Crouch, Blair, Cypert & Waters,* by: *Michael H. Mashburn,* for appellant.

*Davis, Douglas & Penix,* for appellee.

FRANK HOLT, Justice. The trial court, sitting as a jury, found appellant McMillan breached a contract to buy a bulldozer from appellee Meuser and assessed $2,700 as appellee's damages ($2,595 actual and $105 incidental). From that judgment comes this appeal.

On December 13, 1973, the parties entered into their agreement. The purchase price, including a bellhousing, was $9,825, f.o.b. Springdale. Meuser arranged transportation of the bulldozer to Greeley, Colorado, the residence of appellant. On December 24, 1973, McMillan stopped payment on his check asserting that since the agreed delivery date was December 21, the delivery was past due. Appellee's version is that the delivery date was January 1, 1974. After unsuccessful negotiations between the parties or about two months after the appellant purchaser stopped payment on his check, appellee brought this action. On March 5, 1975, or about fourteen months following the alleged breach of the purchase contract, appellee sold the bulldozer for $7,230 at a private sale. During this fourteen month interval, the equip-

ment remained unsheltered, although regularly serviced, on an Arkansas farm, which was its situs when the sale contract was made.

We first consider appellant's assertion that the resale by appellee did not constitute the good faith and commercial reasonableness which is required by Ark. Stat. Ann. § 85-2-706 (Add. 1961). Appellee responds that this defense was not properly raised at trial. We must disagree with appellee. Appellee alleged in its complaint that it had made reasonable efforts to resell the bulldozer. The length of time between the alleged breach and the resale were joined in issue by appellee's direct testimony:

Q: Bill, at the end of a year what did you do with the bulldozer? Did you decide you wanted to keep it or did you decide to sell it?
A: No, after I kept the cat the twelve months for the man and he didn't come get it and didn't accept it, and this had all been filed and the paper work, and what-have-you, on it, I turned around and started seeking a buyer for it.

The time of the resale was again referred to, without objection, in the cross-examination of the appellee:

Q: I believe you also testified that you waited a year after the 13th of December [1973], I guess, before you started trying to sell it again; is that right?
A: That is true.
Q: Okay. So from December 13, '73 until approximately December of '74, you kept it?
A: I didn't try to sell it until after the first of the year, this year. [1975]
Q: So from December 13th, 1973, until the first of this year, you just let it sit?
A: I did.
Q: You didn't try to sell it for a whole year?
A: Nope.

Furthermore, appellant in his motion for a directed verdict specifically invoked § 85-2-706 and, *inter alia,* stated "[T]hat sale is not commercially reasonable and they cannot

rely on that for damages in this case." As indicated, after review of the record, we are of the opinion that the issue of the commercial reasonableness of the resale was sufficiently raised at trial for our determination of the issue.

We turn now to appellant's contention that the resale by appellee Meuser was not in accordance with the requirements of § 85-2-706. The statute provides in pertinent part:

> (1) Under the conditions stated in § 2-703 [85-2-703] on seller's remedies, the seller may resell the goods concerned for the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this Article (§ 2-710 [§ 85-2-710]), but less expenses saved in consequence of the buyer's breach.

> (2) Except as otherwise provided in subsection (3) or unless otherwise agreed resale may be at public or private sale including sale by way of one or more contracts to sell or of identification to an existing contract of the seller. Sale may be as a unit or in parcels and at any time and place and on any terms but every aspect of the sale including the method, manner, time, place, and terms must be commercially reasonable. . . .

Thus, in order to recover the damages prescribed in subsection (1), subsection (2) requires that every aspect of the resale including the method, manner, time, place, and terms must be commercially reasonable. The purpose of the resale provisions is discussed in Anderson, Uniform Commercial Code 2d, § 2-706:19, at p. 385, where it is stated:

> . . . . the object of the resale is simply to determine exactly the seller's damages. These damages are the difference between the contract price and the market price at the time and place when performance should have been made by the buyer. The object of the resale in such a case is to determine what the market price in fact was. Unless the resale is made at about the time when

performance was due it will be of slight probative value, especially if the goods are of a kind which fluctuate rapidly in value, to show what the market price actually was at the only time which is legally important.

In Comment 5 following § 85-2-706, the writers make it clear that "what is such a reasonable time depends upon the nature of the goods, the conditions of the market, and the other circumstances in the case."

In *Bache & Co., Inc.* v. *International Controls Corp.*, 339 F. Supp. 341 (1972), it was held, at least as to the sale of securities, that the resale must be as soon as practicable following notice of the buyer's refusal to accept tender of the goods. There a delay in excess of a month before resale was held unreasonable. In *Uganski* v. *Little Giant Crane & Shovel, Inc.*, 192 N.W. 2d 580 (Mich. 1971), Uganski, the buyer, after his revocation of acceptance, resold heavy equipment, a crane, some two years and two months from the date of his notice of revocation of acceptance. There the court held his two year delay in reselling the crane was commercially unreasonable.

Here, even though we accord a liberal interpretation to the U.C.C., which mandates that remedies be so administered, we are of the view that the resale of the bulldozer, in excess of fourteen months after the alleged breach, will be of "slight probative value" as an indication of the market price at the time of the breach. Appellee Meuser is in the construction business and "deal[s] in bulldozers." Meuser himself testified that he was "aware of the state of the economy in the bulldozer market" and since the time of the alleged breach in December, 1973, the market for bulldozers had declined due to a recession in the construction industry and high fuel prices. As indicated, he testified he made no effort to resell the goods for in excess of a year.

Appellant asserts error in the trial court's granting appellee leave to amend his complaint on the day before the trial. Appellee's original complaint sought recovery for the full purchase price under Ark. Stat. Ann. § 85-2-709 (1)(b) (Add. 1961), alleging unsuccessful reasonable efforts to resell the bulldozer. The permitted amendment was to the effect

that the equipment had been sold by appellee and it sought recovery of damages based on the difference between the contract price and the resale price. Appellant claims that such an amendment made the day before the original trial date was prejudicial on the grounds that it was too late and changed the factual issues before the court. It is well settled that trial courts have broad discretion in the matter of permitting amendments to pleadings and the ruling allowing an amendment will be sustained absent a showing of manifest abuse of discretion which materially prejudices the complaining party. Ark. Stat. Ann. § 27-1160 (Supp. 1975). *Burton* v. *Rice,* 234 Ark. 354, 352 S.W. 2d 568 (1962); and *Hogue* v. *Jennings,* 252 Ark. 1009, 481 S.W. 2d 752 (1972). Further, § 85-2-709 (2), in pertinent part, provides "[T]he net proceeds of any such resale must be credited to the buyer." In the case at bar we find no abuse of the trial court's discretion nor that appellant's rights were materially prejudiced.

Neither can we agree with appellant's contention that the measure of damages provided by § 85-2-706 on resale of goods after breach by the buyer is not applicable here because of asserted noncompliance by appellee with the notice requirements. Subsection (3) of that statute requires "[W]here the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell." § 85-1-201 (26) in pertinent part reads "[A] person 'receives' a notice or notification when (a) it comes to his attention." Appellee's complaint alleged it had made reasonable efforts to resell the goods. In answer to appellant's interrogatories, before the resale, appellee fully described his efforts to resell the bulldozer. Certainly, it must be said that the appellant received notice of appellee's intention to resell the equipment.

Appellant also claims error in the trial court's finding that cancellation of the contract was unjustified. Appellant asserts his cancellation of the contract was valid under Ark. Stat. Ann. § 85-2-504 (Add. 1961). Appellant's argument turns upon a disputed issue of fact as to the actual date of delivery. The appellee adduced evidence that the delivery date was January 1, 1974. This was disputed by appellant whose evidence was to the effect that the delivery date was December 21, 1973. On appeal we are not concerned with determining where the preponderance of the evidence lies,

but only whether there was any substantial evidence to support the verdict which, if supported by any substantial evidence, must be affirmed on appeal. *Nuckols* v. *Flynn,* 228 Ark. 1106, 312 S.W. 2d 444 (1958). In the case at bar, it was for the trial court, sitting as a jury, to resolve the conflicting versions as to the delivery date. There is ample substantial evidence to support the court's finding.

The court's award of $105 for incidental expenses incurred by appellee in servicing the bulldozer during the fourteen months from appellant's breach of the contract until appellee sold the equipment is supported by substantial evidence. In fact, appellee's testimony as to the necessity and the beneficial results of the servicing and maintenance of the equipment appears undisputed. As to the resale of the bulldozer, the appellee, admittedly, is in the construction business, sells bulldozers and was aware of the declining market. As previously indicated, as a matter of law, the long delay in the resale of the bulldozer by the appellee is commercially unreasonable. Consequently, the judgment is affirmed upon the condition that the award of $2,595 for actual damages is offered as a remittitur within the next seventeen days. Otherwise, the judgment is reversed and remanded.

Affirmed upon condition of remittitur.

We agree: FOGLEMAN, JONES, and BYRD, JJ.