## C. V. STEED *v.* Paul BUSBY and Floyd BUSBY

79-175                                      593 S.W. 2d 34

Supreme Court of Arkansas
Opinion delivered February 4, 1980

2

*Butler, Hicky & Hicky,* for appellant.

*Sharpe & Morledge, P.A., for appellees.*

JOHN A. FOGLEMAN, Chief Justice. This is a suit by C.V. Steed to collect the unpaid balance on a rent note executed by appellees, Paul and Floyd Busby. Steed held a lease on 500 acres of land near Forrest City, which he had, for more than ten years, subleased either to appellees Paul and Floyd Busby or to their father. On or about January 1, 1976, Steed rented the lands to appellees (to whom we will refer as Busby Brothers) for a rental of $19,500, of which $1,000 was paid at the time. The balance was represented by a rent note for $18,500 due November 15, 1976. The agreement was entered into by Steed and Paul Busby, but both brothers signed the

rent note. On December 6, 1976, Busby Brothers paid Steed $13,534, but refused to pay the balance of $4,966.

Busby Brothers filed an answer to Steed's complaint and a counterclaim. They alleged that they had lost rice crops valued at $4,030 by reason of Steed's refusal to replace a rice well, although he had agreed to repair and replace rice wells on the farm. They also alleged that they had replaced the well which failed during the crop season at a cost to them of $5,-200. Steed replied, alleging that the rent note constituted the entire agreement between the parties and that he was not obligated to replace the well. Steed's pleading was filed on June 9, 1977. The case came to trial on February 22, 1979, and a jury verdict for Busby Brothers was rendered. On the basis of the verdict, a judgment dismissing Steed's complaint and allowing $500 damages on the counterclaim of Busby Brothers was entered. Steed has appealed from the judgment and from the trial court's denial of his motion for judgment notwithstanding the verdict. We find no reversible error and affirm.

Steed first argues that the trial judge erred in permitting Busby Brothers to amend their counterclaim by a pleading filed on the day before the trial, but not received by Steed's attorney until 9:00 a.m. on the date of trial, to increase the amount of damages sought from $4,030 to $8,000, over Steed's objection. The case had been at issue since the filing of Steed's reply, but the trial had been continued twice, once upon Steed's motion and once upon the motion of the Busbys.

In the amendment, Busby Brothers simply alleged that the damage for crop loss had been $8,000 instead of the $4,-030 sought in the original counterclaim. Appellant merely states that the court's allowance of this amendment was a prejudicial abuse of discretion, without citation of authority or convincing argument, so we might disregard this point under the rule of *Dixon* v. *State,* 260 Ark. 857, 545 S.W.2d 606. We point out, however, that, under Ark. Stat. Ann. § 27-1160 (Repl. 1962), the trial court is authorized to amend pleadings or to conform them to the facts proved. We have held that this statute vests a broad discretion in the trial court to permit

amendments of pleadings, that pleadings should be liberally allowed in the furtherance of justice and that the exercise of the trial court's discretion will be sustained unless there has been a manifest abuse. *Bill C. Harris Construction Co. v. Powers,* 262 Ark. 96, 554 S.W. 2d 332; *Bonds* v. *Littrell,* 247 Ark. 577, 446 S.W. 2d 672. The party seeking reversal on this ground must show that there was a manifest abuse of discretion which materially prejudiced him. *McMillan* v. *Meuser Material & Equipment Co.,* 260 Ark. 422, 541 S.W. 2d 911.

Steed also contends that the trial court erred by permitting appellees to introduce evidence in support of their counterclaim to which he objected and which the trial judge later told the jury to disregard. Appellant's argument is purely a statement of generalities and conclusions. He does not specify the evidence to which he has reference, except by saying that astronomical figures were placed upon a blackboard based upon leading questions asked Paul Busby by appellees' attorney and by quoting the court's admonition to the jury to disregard the figures on the blackboard. It appears that the testimony was given in an effort to show damages by comparing the amount of rice harvested from one field on the farm in 1975 and that harvested in 1976, and multiplying the yields by the price per bushel received by Busby Brothers in 1976. Objection was made to the testimony on the ground that it was speculative and showed damages greater than alleged in the pleadings and appellant moved that it be stricken. It appears that appellees' attorney had been writing figures on a blackboard and merely obtaining confirmation by asking the witness leading questions. The trial court, after objection had been made, gave appellees' attorney the opportunity to get direct testimony from the witness. The circuit judge then instructed the jury to disregard the figures on the blackboard. After all the testimony of both parties had been concluded, the judge again instructed the jury to disregard the figures on the blackboard, at appellant's request. Appellant did not move for a mistrial and is in a poor position to complain of the court's action in doing exactly what his counsel asked the court to do.

The trial court has a broad latitude of discretion in determining the action appropriate to eliminate the prejudicial effect of incompetent testimony. *Arkansas State Highway Com'n.* v.

*Shepherd,* 239 Ark. 1010, 395 S.W. 2d 743. We are unable to say that the trial judge's discretion was abused in this case.

Steed asserts that the trial court erred in denying his motion for judgment notwithstanding the verdict and that the jury verdict was contrary to the law and to the weight of the evidence. His contentions are stated in two points, but the basic question is the same. We are not concerned with the preponderance of the evidence on this appeal from a judgment based on a jury verdict. We are only concerned with the question whether there was substantial evidence to support the verdict of the jury. *Griffith Lumber Co.* v. *Connor,* 255 Ark. 623, 502 S.W. 2d 500. The same question is involved in reviewing the action of the trial court on the motion for judgment notwithstanding the verdict. *Wheeling Pipe Line* v. *Edrington,* 259 Ark. 600, 535 S.W. 2d 225; *Swafford* v. *Sealtest Foods Division,* 252 Ark. 1182, 483 S.W. 2d 202; *Spink* v. *Mourton,* 235 Ark. 919, 362 S.W. 2d 665.

This question has troubled us more than any other on this appeal. We have concluded, however, that we are unable to say that there is no substantial evidence to support the verdict. Paul Busby testified that the Busbys had rented the land for 11 years, starting in 1965. The well that failed in 1976 was on the land during all that time. According to him, the land was rented to Jim Busby & Sons in earlier years, but when his father, Jim Busby, quit farming, Steed rented the land to appellees. Paul Busby said that there was never a written lease and that the contract was always by "word of mouth" and that the parties "would always deal on a rent note." According to him, there was a new note signed each year, but no contract was signed. He said that Steed had agreed in 1976 to keep up all wells and Busby Brothers had agreed to furnish all motors and all equipment for working the land. He explained that Busby Brothers had not asked for any written agreement because they had never had any trouble with a well except during 1970 and that they had had that well repaired at a cost of $600, which Steed refused to pay because the Busbys had not asked him to do anything about it and he had not authorized the work.

Busby admitted that when the rent note was signed in

1976, nothing was said about any condition of the rental agreement, except the amount of the rent, but said that in 1975, when the rental agreement was made after his father retired, Steed had said that "we'll keep everything like it's been in the past." When asked to explain "what it was like before," Busby answered:

> Well, we just, you know, he agreed to keep everything up, all the wells up, and the stuff, and we would furnish the motor and the equipment and the stuff to work the ground with.

On cross-examination, the following question was propounded and answer given:

> Q. Now, this morning on direct examination, you testified—Well, let me ask you this question: At the time you all were sitting in the car and signed this rent note, did Mr. Steed say to you, "I'll fix the wells if they go out on this place." Did he say this at that time?
>
> A. Not that particular year; he told me the year before.

Paul Busby further testified that when the trouble with the well occurred in 1976, he went to Steed's house and reported the situation, and Steed suggested that they use a well Steed owned on another place if it could be moved. Busby said that after Busby Brothers learned the well could not be used, he again talked to Steed, who suggested that the Busbys get another used well, but after a week, Busby Brothers put down a new well. Steed admitted that he had offered to let the Busbys remove the well on another place and put it in on the lands rented by Busby Brothers, but said that he had told them he couldn't do anything else. Busby said that he tried, without success, to get Steed's approval of the new well.

It is true that the evidence partakes of the character of circumstantial evidence. This type of evidence, however, may be sufficient to show either an express or implied contract *Rush* v. *Rush's Estate,* 27 Ill. App. 2d 242, 169 N.E. 2d 538 (1960); *Ward* v. *United States,* 158 F.2d 499 (8 Cir., 1946). The

two types of contract are not necessarily inconsistent. *Johnson v. Whitman,* 1 Wash. App. 540, 463 P. 2d 207 (1969). There are two classes of implied contracts, i.e., those properly called implied contracts, where the contract is inferred from the acts of the parties and those which are more properly called quasi-contracts or constructive contracts, where the law implies an obligation. *Caldwell* v. *Missouri State Life Insurance Co.,* 148 Ark. 474, 230 S.W. 566. The first type of implied contract is sometimes called a contract implied in fact and it derives from the "presumed" intention of the parties as indicated by their conduct. *Martin* v. *Campanaro,* 156 F. 2d 127 (2 Cir., 1946). See also, *Gray* v. *Kirkland,* 550 S.W. 2d 410 (Tex. Civ. App., 1977); *Johnson* v. *Whitman,* supra; *United States* v. *O. Frank Heinz Construction Co.,* 300 F. Supp. 396 (S.D. Ill., 1969). In determining whether a "tacit" but actual contract exists, the prior course of dealing between the parties is to be considered. *Jones* v. *Donovan,* 244 Ark. 474, 426 S.W. 2d 390. An implied contract is proved by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties. *In re Brumshagen's Estate,* 27 Ill. App. 2d 14, 169 N.E. 2d 112 (1960). A contract implied in fact does not describe a legal relationship different from that created by an express contract. *Johnson* v. *Whitman,* supra; Restatement of Contracts § 5, Comment a (1932). When an agreement expires by its own terms, if without more the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old, and the existence of the new contract is determined by an "objective" test, i.e., whether a reasonable man would think, from the actions, that they intended to make a new binding agreement. *Martin* v. *Campanaro,* supra; cf. *Jones* v. *Donovan,* supra. In such a case, when the parties continue to do business together, their conduct may permit, or even constrain, a finding that they impliedly agree that their rights and obligations should continue to be measured as provided in the old contract. *New York Telephone Co.* v. *Jamestown Telephone Corp.,* 282 N.Y. 365, 26 N.E. 2d 295 (1940).

If we were able to pass upon the credibility of the witnesses or to weigh the evidence to determine the preponderance, we might well agree with the appellant.

Instead, we must consider only that evidence favorable to appellees. We must view the testimony of Paul Busby in that light, because we cannot say that it is entirely without probative force. *Hatfield Special School District* v. *Knight,* 118 Ark. 432, 176 S.W. 701. We must also draw all reasonable inferences favorably to the jury verdict. *Page* v. *Boyd-Bilt, Inc.,* 246 Ark. 352, 438 S.W. 2d 307. We cannot reverse the judgment on this ground unless, after giving legitimate presumption in favor of the jury verdict, there is no reasonable probability in favor of appellees' version. *McWilliams* v. *R. & T. Transport,* 245 Ark. 882, 435 S.W. 2d 98. We are unable to make this determination. Even if we should say that the evidence was insufficient to show an express contract, we cannot say that there was no substantial evidence to show an implied contract.

We should mention that, while we do not think the parole evidence rule should apply if full credit is given to Paul Busby's testimony, which tends to show that the rent note was only evidence of the debt for the balance of the rent, and not the entire contract between the parties, the rule was first invoked on appeal, so we do not consider its application on appellate review.

The judgment is affirmed.

STROUD and MAYS, JJ., not participating.