_____

No. 95-2583
_____

Kimberly Phillips,                          *
                                            *
            Appellant,                      *
                                            *  Appeal from the United States
    v.                                      *  District Court for the
                                            *  Eastern District of Arkansas.
The Marist Society of                       *
Washington Province,                        *
                                            *
            Appellee.                       *


_____

        Submitted:  January 8, 1996

          Filed:  April 4, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN, Circuit Judge, and JONES,*
      District Judge.
_____

BOWMAN, Circuit Judge.


    Kimberly Phillips alleges that she is a third-party beneficiary to
an implied contract between the Marist Society and one of its priests.  We
conclude that Phillips has not introduced sufficient evidence to show the
existence of the implied contract that she has alleged, and we affirm the
order of the District Court[1] granting summary judgment to the Society.

_____

        *The HONORABLE JOHN B. JONES, United States District
        Judge for the District of South Dakota, sitting by
        designation.

        [1]The Honorable George Howard, Jr., United States District
Judge for the Eastern District of Arkansas.

While serving as a chaplain in the United States Air Force, Timothy Sugrue, a Marist priest, sexually assaulted Phillips, then a girl of seven to eight years of age. Years later Phillips sued both Sugrue and the Society for the injuries she suffered as a result of Sugrue's intentional tortious conduct. Phillips obtained a $1.5 million judgment against Sugrue, but the jury found that the Society was not liable for negligent supervision. Phillips made a demand on the Society for the amount of the judgment against Sugrue, but the Society refused to pay. Phillips contends that this refusal constitutes a breach of an implied contract between the Society and Sugrue, and Phillips has brought this separate action against the Society claiming that she is a third-party beneficiary of the implied contract. Describing the contract in her complaint, Phillips alleges that "Father Sugrue agreed to turn over all present or after acquired income, property or other assets, wherever situated[,] to the Marists in exchange for the Marist's [sic] agreement to support Father Sugrue for life and to pay all of Father Sugrue's `just debts.'" Complaint at ¶ 15.

The District Court granted the Society's motion for summary judgment, concluding that analyzing the relationship between the Society and Sugrue would require the court to interpret canon law and other religious authorities. The court held that the Free Exercise Clause of the First Amendment prohibits secular courts from such intrusions into ecclesiastical affairs. The court stated that Phillips's effort "to concoct a parallel secular contract . . . cannot exist outside the framework, interpretation and application of Canon Law and the laws of the Marist [Society] which evaluation violates the First Amendment." Order at 12. The court also stated that Phillips "simply cannot divorce the `vow of poverty' from its religious application." Id.

On appeal, Phillips argues that the contract between Sugrue and the Society was secular and not religious. Phillips also argues that, even if some religious doctrine is implicated by the

secular contract, secular courts could review the contractual issues under the "neutral principles of law" approach.  See, e.g., Jones v. Wolf, 443 U.S. 595, 602-03 (1979).  We will assume for the purposes of this appeal that Phillips's arguments on these issues are correct.  It is well settled, however, that a court of appeals may affirm on any ground supported by the record, whether or not that ground was addressed by the District Court. Auman v. United States, 67 F.3d 157, 161-62 (8th Cir. 1995).  Applying that rule, we conclude that, even if the First Amendment does not bar a secular court's consideration of the issues raised by Phillips's lawsuit against the Society, Phillips has not produced sufficient evidence of a contract to survive the Society's motion for summary judgment.  We thus affirm the judgment of the District Court, although our rationale differs from the reasons stated in the District Court's thorough and well-written order.

We review de novo a district court's decision to grant a motion for summary judgment.  Maitland v. University of Minn., 43 F.3d 357, 360 (8th Cir. 1994).  Summary judgment will be affirmed if there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  Summary judgment is mandated when the nonmoving party fails to introduce sufficient evidence to establish an essential element of the case for which that party would have the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In this case, we must decide whether Phillips has produced sufficient evidence to create a genuine dispute of fact concerning the existence of the implied contract she has alleged, an essential element of Phillips's contract claim.

As a preliminary matter, it appears that the parties disagree over whether Arkansas law or the law of the District of Columbia controls the resolution of the legal issues raised in this appeal.  We agree with the statement of Judge Richard A. Posner that "before entangling itself in messy issues of conflict of laws a court ought

to satisfy itself that there actually is a difference between the relevant laws of the different states." Barron v. Ford Motor Co. of Canada, Ltd., 965 F.2d 195, 197 (7th Cir.), cert. denied, 506 U.S. 1001 (1992). Having reviewed the relevant laws of Arkansas and the District of Columbia, we conclude that the legal principles involved in this case, rooted as they are in the common law of contracts, are the same in both jurisdictions. We thus do not need to engage in a choice-of-law analysis. See Forsyth v. Cessna Aircraft Co., 520 F.2d 608, 613 (9th Cir. 1975) ("In the absence of a true conflict, lex fori controls.").

The issue in this case is whether Phillips has come forward with sufficient evidence from which a reasonable jury could find the existence of an implied-in-fact contract between the Society and Sugrue that would obligate the Society to pay judgments entered against Sugrue for intentional tortious conduct such as the sexual abuse of a minor. Under the common law of contracts, a contract may be either express or implied. Steed v. Busby, 593 S.W.2d 34, 38 (Ark. 1980); see also Yasuna v. Miller, 399 A.2d 68, 74 n.14 (D.C. 1979). A promise, express or inferred, is an indispensable element of every contract. See Downtowner Corp. v. Commonwealth Securities Corp., 419 S.W.2d 126, 128 (Ark. 1967); see also Richardson v. J.C. Flood Co., 190 A.2d 259, 261 (D.C. 1963). The terms of a contract implied in fact, that is, a contract defined by the presumed intentions of the parties rather than by their expressed intentions, can be inferred from the acts of the parties or the general course of dealing between the parties. See Steed, 593 S.W.2d at 38; see also Richardson, 190 A.2d at 261. The conduct of the parties is to be evaluated from the point of view of a reasonable person, considering all of the attendant circumstances. Roebling v. Dillon, 288 F.2d 386, 388 (D.C. Cir.), cert. denied, 366 U.S. 918 (1961).

In her brief to the District Court, Phillips characterized the alleged implied contract as one in which the Society pays all the

expenses, debts, and obligations of its priests in return for the priests' pledges to turn over all of their income and property. Phillips, however, has failed to produce any evidence that tends to prove the existence of such a broad contract. At most, Phillips's evidence may be sufficient to show that the Society has promised to pay the necessary living expenses of its priests. That showing, however, is a far cry from showing a promise by the Society to pay any and all of its priests' debts, no matter how incurred.

In response to the Society's motion for summary judgment, Phillips has submitted a substantial amount of evidence relating to the course of conduct between the Society and Sugrue and between the Society and its other priests. It is undisputed that Sugrue took vows when he became a priest in 1963, including a vow of poverty. As a general rule Marist priests arrange to have their earnings paid to the Society, and the Society either provides the necessities of life directly or pays its priests a modest living allowance. The record shows that since 1963 Sugrue has arranged to have all of his earnings paid to the Society and the Society has paid his living expenses.

Phillips also submitted evidence that the Society regularly informed creditors of individual priests that the priest's "assets/belongings (as well as any debts incurred) are those of the Society." Letter from Society Business Manager to Ochsner Foundation Hospital (June 19, 1990). The Society made similar statements to credit card issuers. In every instance, however, these statements are limited by the context in which they were made. The June 19, 1990 letter, for example, goes on to state that "[t]he medical and hospital expenses of the members of our Order are paid by the Marist Society." Id. As the Society points out in its brief, the Society's commitment to any credit card issuers is clearly restricted to the credit limit on the credit cards. See Society's Brief at 30. Moreover, when supporting two priests' applications for credit cards the Society stated that "[t]he fair

market value income for both Frs. [X] and [Y] is approximately $25,000.00," clearly indicating that the credit extended should be limited to an amount commensurate to the priests' income. Letter from Society Business Manager to Riggs National Bank (May 6, 1991).

Phillips also points to Sugrue's application for employment with the United States Air Force as evidence of the promise allegedly made by the Society. In response to a question regarding the applicant's credit history, Sugrue stated, "I have been a member of the Washington Province of the Society of Mary (Marists) for nine years. Their credit is my credit." Sugrue Air Force Application at Item 19. Again, taken in context, this statement does not prove the existence of the implied contract alleged by Phillips. Sugrue's statement was designed to explain to the Air Force that he had good credit despite the fact that he had not had a salary for nine years. The statement in no way demonstrates that Sugrue believed that the Society would pay any debt he incurred.

The testimony of John Harhager, former Provincial of the Society, is similarly limited when considered in context. During the 1993 trial of Phillips's first action against Sugrue and the Society, Harhager was asked what the Society's responsibilities would be at the time of Sugrue's death. Harhager said, "We would pay those [debts] that we consider . . . to be just, that's right." Transcript of Harhager Testimony at 21, Phillips v. Sugrue, No. LR-C-92-132 (E.D. Ark. Oct. 28, 1993). He did not say that the Society would pay all of Sugrue's debts; rather, Harhager clearly stated that the payment of outstanding debts at the time of a priest's death was in the discretion of the Society.

The record cited by Phillips simply does not support her claim that the Society promised to pay all of Sugrue's debts, no matter how those debts were incurred, as long as Sugrue remained a member

of the Society.[2]  To the contrary, the record shows that any out-of-the-ordinary expenses were not paid until they had been considered and approved by the Society's provincial or its board of directors.  In particular, the payment of a $30,000 settlement to a person who claimed to have been abused by a former member of the Society was authorized by a vote of the Society's board of directors.  This claim is the most closely analogous to Phillips's claim, and the record is clear that the Society did not believe it was obligated to pay the claim.  Had the Society been obligated to pay, a discussion and vote at a meeting of its directors would not have been necessary.  The only evidence of the Society's course of conduct with respect to expenses other than ordinary living expenses shows that when payments for such expenses were made, they were made as an exercise of discretion on the part of the Society's provincial or its board of directors, and not as the performance of a contractual obligation of the Society.  This evidence, which is undisputed and uncontroverted, flies in the face of Phillips's theory that the Society promised to pay all of its priests' debts irrespective of how they were incurred.  In the absence of any evidence of a course of conduct consistent with a promise by the Society to pay every debt of its priests no matter what the circumstances (or at least a promise to pay judgments based on its priests' intentional tortious conduct), Phillips cannot substantiate her claims.  The evidence may be sufficient to show an implied contract to pay for the necessities of life, but that question is not material in the circumstances of this case.  Accordingly, the Society is entitled to judgment as a matter of law, and the District Court properly granted the Society's motion for summary judgment.

---

[2]The record cited by Phillips also does not show that the Society has never refused a debt of any kind owed by its priests until it refused to pay the judgment against Sugrue.  In fact, the particular part of the record cited by Phillips relates only to legal and medical expenses of priests.

We hardly need say, but will say anyway, that we do not condone Sugrue's actions. In Phillips's tort action, the jury found that Phillips suffered a serious injury at Sugrue's hands. We note that he remains a priest and a member of the Society. Phillips, however, has failed to produce evidence tending to show the existence of a contract that would make the Society liable for injuries caused by Sugrue's intentional torts. Based on Phillips's evidence, no reasonable juror could find that the alleged contract exists, and there is simply no genuine issue of material fact requiring jury resolution. On this record, it appears that whatever obligation, if any, the Society has to Phillips lies strictly in the realm of moral or religious obligation, and is not one that the law empowers the secular courts to enforce.

Accordingly, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.