# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2209

_____

| | | |
|---|---|---|
| Randi (Ricklick) Waters, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Metropolitan State University, a state program; | * | |
| | * | |
| | * | |
| Defendant, | * | Appeal from the United States |
| | * | District Court for the District |
| Mark Matthews, in his individual and official capacity; | * | of Minnesota. |
| | * | |
| | * | |
| Defendant - Appellee, | * | [UNPUBLISHED] |
| | * | |
| State University Board, a state agency; Minnesota, State of, | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

_____

Submitted:  March 14, 2002

Filed:  October 25, 2002

_____

Before LOKEN and JOHN R. GIBSON, Circuit Judges, and GOLDBERG,[1] Judge.
_____

PER CURIAM.

Randi Waters appeals the district court's[2] grant of summary judgment against her on her sexual harassment claim against Mark Matthews under 42 U.S.C. § 1983. The district court held that a reasonable jury could not find that Matthews' sexual advances to Waters were unwelcome as a matter of law. Waters does not challenge the latter part of the summary judgment order, in which the district court analyzed her Title IX claim against Metropolitan State University and found that she failed to present evidence of "deliberate indifference" on the University's part. On appeal, Waters challenges only the dismissal of the § 1983 claim against Matthews. She argues that the district court erred in analyzing her claim against Matthews as a Title IX suit, rather than as a § 1983 claim against Matthews in his individual capacity for deprivation of her right to equal protection of the laws. Waters also asserts that the district court failed to assume her version of the facts was true and to give her the benefit of all reasonable inferences. We affirm the judgment of the district court.

The record before the district court shows that defendant Mark Matthews was and is a professor of philosophy at Metropolitan State University, where plaintiff Randi Waters was a student. In January 1995, Waters took a class with Matthews. During the spring term of 1995, Waters enrolled in a second class with Matthews, an independent study, but was unable to complete the work due to a personal tragedy. Over the next few months, Waters remained in contact with Matthews regarding her independent study and received an extension on her assignments. The independent

---

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

study then lapsed in September 1995. Waters and Matthews met in his office at least once during the fall of 1995. In February 1996, Waters called Matthews to thank him for his support and friendship over the previous few months. In March 1996, Matthews told Waters that he "wanted to pursue this friendship more" and invited her over to his apartment. Waters got a babysitter for the evening and went over to Matthews' apartment for a few hours. Over the next week or so, she returned to his apartment four or five times upon his request. By April 1996, Waters and Matthews had entered into what Waters later termed a "consensual sexual relationship," which continued until approximately January 1997.

After making a formal sexual harassment complaint to Metropolitan State University in March 1997, Waters filed this action in federal district court alleging, among other claims, that Matthews violated her "equal protection right to an education free of sexual harassment." Much of Waters' complaint focused on her visits to Matthews' apartment in March and April of 1996, in which she alleged that Matthews pressured her to have sex with him and to withdraw from Metropolitan State. Alleged injuries included the loss of educational opportunity, loss of economic benefits, and emotional distress, humiliation, and embarrassment.

In its summary judgment order, the district court stated that under the Title IX analysis of Kinman v. Omaha Pub. Sch. Dist. (Kinman I), 94 F.3d 463, 468 (8th Cir. 1996), overruled on other grounds by Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998), it must determine whether Matthews' sexual advances were "unwelcome." The court held that if Waters was unable to meet this Title IX standard, the alleged misconduct could not form the basis for an independent § 1983 claim because constitutional protections against sexual harassment are more limited than Title IX protections. In analyzing claims against both Matthews and Metropolitan State University, the district court found that "there is no evidence whatsoever that the relationship [between Waters and Matthews] was unwelcome,"

and that "Ms. Waters' claims all fail, as a matter of law, because she has offered no evidence that her relationship with Mr. Matthews was unwelcome."

On appeal, Waters argues that the district court incorrectly analyzed her claim against Matthews by determining that Matthews' behavior was not sexual harassment under Title IX,[3] and therefore, did not violate the Constitution. Waters points out that her claim against Matthews was not a Title IX action, but rather, a § 1983 action against Matthews in his individual capacity. Thus, Waters believes that the district court should have first looked at her claim against Matthews through the procedural lens of § 1983, before discussing the merits of the alleged constitutional deprivation.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). While the moving party has the burden of showing the absence of a genuine issue of material fact, Enterprise Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996), the nonmoving party may not "rest on mere allegations or denials," but must demonstrate on the record the existence of specific facts which create a genuine issue for trial. Krenik v. County of LeSueur, 47 F3d 953, 957 (8th Cir. 1995). We review the district court's grant of summary judgment de novo. See Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 573 (8th Cir. 1997). Furthermore, "[i]t is well settled . . . that a court of appeals may affirm on any ground supported by the record whether or not that ground was

---

[3]Title IX provides, "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ." 20 U.S.C. § 1681(a) (2000). The United States Supreme Court has recognized an implied right of action under Title IX for money damages in cases of intentional discrimination. See Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992).

-4-

addressed by the District Court." Phillips v. Marist Soc., 80 F.3d 274, 275 (8th Cir. 1996).

To hold Matthews liable under § 1983, Waters must show that Matthews acted "under color of state law" and that he deprived her of rights, privileges, or immunities secured by the Constitution or federal law. Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir. 1997). In Roe, we noted that "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally a public employee [acts] under color of state law, while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. (citations omitted). Furthermore, the plaintiff's "deprivation must be caused by the exercise of some right or privilege created by the State, or by a rule of conduct imposed by the State, or by a person to whom the State is responsible." Id. In the end, there needs to be a clear intersection between the defendant's official conduct and the violation of the plaintiff's rights. See S.J. v. Kansas City Missouri Pub. Sch. Dist., 294 F.3d 1025, 1028 (8th Cir. 2002) (absent "some nexus" between teacher's governmental role and violation of student's rights, § 1983 claim against the individual teacher must fail).

When Matthews approached Waters about pursuing a sexual relationship and allegedly persuaded her to drop out of school in the spring of 1996, Matthews was not acting in his official capacity as a teacher or an advisor. Waters had enrolled in Matthews' seminar during the winter quarter of 1995 and in an independent study during the spring quarter of 1995. In the latter class, she received an extension and

then did not receive a grade after the class had lapsed.[4]  During the following school year, Waters did not enroll in any of Matthews' classes.[5]

Waters also claims that Matthews was serving as her advisor.  However, the University listed Wang Ping, and not Matthews, as her official advisor.  The chair of the philosophy department, Ronald Salzberger, acknowledged that while most students are paired with advisors and are advised out of an advising office, students are "sometimes relatively free to roam insofar as getting advice."  Waters and Matthews discussed academic and personal affairs on the telephone and in his office in late May 1995, late June 1995, and the fall of 1995.  The following year, when the alleged harassment took place, Waters was technically enrolled at Metropolitan State, but had failed or withdrawn from all of her classes.  In its summary judgment order, the district court concluded:

---

[4]Waters asserts that she could have received an indefinite extension for the course and that Matthews could have given her a grade for the course at any point over the next two years.  However, the University's "Policies and Procedures" guideline specifically states that "[s]tudents must complete work within 130 days after registration for an independent study and . . . may request one 90-day extension with their instructor's approval.  (No more than one extension)."  By the fall of 1995, Waters' independent study had lapsed.  According to Leah Harvey, Metropolitan State's Vice President for Student and Academic Affairs, the only way a student could receive a grade in a lapsed independent study is if he or she decided to appeal through the instructor.  There is nothing in the record suggesting that Waters took steps to make such an appeal.

[5]Waters alleges that Matthews advised her not to take his class in the fall of 1995 so he could pursue her romantically.  She also alleges that  he offered to give her a grade in the independent study before she had completed the work. Waters did not report either of these alleged actions to the University and has not asserted that these actions, independent of Matthews' later conduct, would constitute sexual harassment.

Waters was an adult student, somewhat older than the "typical" college student. Moreover, Waters was no longer taking a class with Matthews, had not named him her official advisor, and had not been actively pursuing her studies at Metro State at all. Waters may have entertained some notion of pulling her life together and focusing on her studies again, may have even considered the possibility of naming Matthews as her advisor. However, Waters may not rely upon a power disparity which might have arisen in the future. At the time of Matthews' romantic overtures, there was no legitimate academic relationship between Matthews and Waters.

Even if a reasonable fact-finder could conclude that there was a legitimate academic relationship and that Matthews was acting under color of state law, Waters still had to show that Matthews' actions constituted sexual harassment. As for the substantive part of her §1983 claim, Waters asserted that Matthews violated her right to equal protection of the laws under the Fourteenth Amendment. In order to prove this constitutional violation, she had to show both that Matthews committed "sexual harassment" and that he had the requisite "intent" to harass her based on her membership in a particular class of citizens. Trautvetter v. Quick, 916 F.2d 1140, 1149 (7th Cir. 1990). As the Supreme Court has explained, to constitute sexual harassment, sexual advances must be "unwelcome." Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986). In keeping with this analysis, the district court stated:

> [T]he facts do not support a conclusion that Waters "merely acquiesced" to Matthews' advances. Waters actively encouraged a private, personal relationship with Matthews, going so far as to name him decision-maker for her children in February of 1996. Waters returned to Matthews' apartment repeatedly, securing child-care for her daughter on each visit.

The district court did not err in concluding that Matthews' sexual advances were not "unwelcome" and that Matthews' behavior was not sexual harassment for purposes of the Fourteenth Amendment. Accordingly, we affirm the district court's grant of summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.